# EXHIBIT B

VIRGINIA:

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

```
- - - - - - - - - - - - - - - - - - - - - - - - - X
```

XIA BI, NIAN CHEN, YUANYUAN CHEN,      :
QINGLI CHENG, YING CHENG,              :
DONGSHENG HU, JUN HUANG, KUI LE,       :
CHUNSHENG LI, ZHONGHUI LI, LIN LIN,    :
LAN LIU, LING LIU, ZHENG QIN, MEIMING  :
SHEN, YUNPING TAN, BIXIANG TANG,       :
XIAONAN TANG, CHUN WANG, RUI WANG,     :
YAHONG WANG, YUE WANG, JIAN WU, LEI    :   Case No.: _____ **2 0 1 7   1 6 5 5 2**
YAN, JUNPING YAO, JIN YOU, ZHEN YU,    :
HOUQIAN YU, NIANQING ZHANG, XUEMEI     :
ZHANG, HUIBIN ZHAO, and YAN ZHAO,      :
                                       :
                    Plaintiffs,        :
                                       :
       v.                              :
                                       :
TERRY MCAULIFFE, ANTHONY RODHAM,       :
XIAOLIN "CHARLES" WANG, AMERICAN       :
IMMIGRATION CENTER, LLC, a Virginia    :
limited liability company, CAPITAL WEALTH :
HOLDINGS LIMITED, a British Virgin Islands :
company, GREENTECH AUTOMOTIVE         :
CAPITAL A-3 GP, LLC, a Delaware limited :
liability company, GREENTECH          :
AUTOMOTIVE, INC., a Mississippi corporation, :
GULF COAST FUNDS MANAGEMENT, LLC,     :
a Louisiana limited liability company, WM :
INDUSTRIES CORP., a Virginia corporation, and :
DOES 1-100,                            :
                    Defendants.        :
                                       :
                                       :
```
- - - - - - - - - - - - - - - - - - - - - - - - - X
```

## COMPLAINT

### I.   INTRODUCTION

1.      This action seeks to remedy a $120 million scam perpetrated by savvy and politically

connected operatives and businessmen including now-Governor Terry McAuliffe, Anthony

Rodham, brother of Hillary Clinton, and Charles Wang, a former securities lawyer at a leading American law firm, against dozens of Chinese immigrants seeking the American Dream. These Defendants – through a labyrinth of corporate fronts – exploited the Plaintiffs' desire to become permanent residents in our nation by, in sum or substance, making the following offer: invest $500,000 in our electric car company and we will leverage our political connections to ensure your immigration papers will get to the top of the pile, and then be approved. Better yet, according to Defendants, the investors would quickly recover their capital investments in full.

2.      Defendants knew the company would be particularly attractive to Chinese investors because of its ties to the U.S. government. Defendants milked these connections in marketing materials, which featured Mr. McAuliffe, the former head of the Democratic National Committee and chief fundraiser for the Clinton political operation, alongside luminaries like former President Bill Clinton, who headlined the company's groundbreaking ceremony and was prominently featured on its website. Defendants exploited those relationships to assure investors of both the success of the company and their ability to obtain U.S. Citizenship and Immigration Services ("USCIS") approval of the visa applications, which were instrumental in Plaintiffs' decision to place both their trust – and their money – in Defendants' hands.

3.      Mr. McAuliffe, Mr. Rodham, and Charles Wang manipulated and leveraged a federal immigration program to steal Plaintiffs' money and dreams. Through the Immigrant Investor Program, or EB-5 program, foreign nationals and their immediate families are afforded the opportunity to permanently live and work in the United States if they surpass regulatory thresholds for investment in new job-creating enterprises. The enterprise Defendants pitched was GreenTech Automotive, Inc. ("GreenTech"), a hybrid car company focused on compact cars traveling less than 25 miles per hour, so as to avoid significant regulation. Despite promising investors, in addition to

2

a highly desired immigration status, that their investments in GreenTech were guaranteed, GreenTech has manufactured very few cars, sold no cars, and is rumored to be on the brink of bankruptcy.

4.      Mr. McAuliffe, Mr. Rodham, and Charles Wang defrauded investors with one false representation after another. They misrepresented the number of direct and indirect jobs the company could, would, and did generate (a key factor in whether Plaintiffs' visas would be approved). They said GreenTech had been selected as a Department of Defense contractor. They trumpeted the quality and advancement of GreenTech's technology. They claimed GreenTech's collateral exceeded the amount of loans Plaintiffs and other investors would be making to fund GreenTech's start-up. They told investors that they had received more orders than they could keep up with. They talked up GreenTech's significant investments in China. They told investors they had won a lawsuit against a watchdog organization that had been critical of GreenTech (it was dismissed for lack of jurisdiction). And they told the investors that they would obtain permanent residency in the United States. All of these representations were false.

5.      After successfully inducing Plaintiffs to invest $500,000 each, the deceptions snowballed. They did not disclose the existence of government investigations. Nor did they disclose adverse government findings. When they did discuss these investigations or findings, they misrepresented them. They painted a false picture of the state of the company, including instructing employees to pretend to be working while investors toured the plant. They misrepresented the ease with which investors' immigration petitions would be granted, falsely claimed that Chinese investment was just a small percentage of GreenTech's total financing (it was actually 100% of GreenTech's financing), lied about the sales and expected sales of the company, lied about the

3

number of types of vehicles GreenTech would manufacture, and lied about the company's plans to go public.

6.      Defendants' false representations lulled Plaintiffs into a particularly pernicious and false sense of security, given that the Plaintiffs, relying on the Defendants' word, were uprooting their families from the other side of the world in anticipation of the permanent residency they were promised.

7.      While Defendants kept their scam hidden from the investors, several government entities analyzed, and condemned, Defendants' shady practices. Whistleblowers at the Department of Homeland Security informed its Inspector General that the then-Deputy Secretary of the Department, Alejandro Mayorkas, in an "unprecedented" intervention, bullied underlings into reversing a decision that, when made, precluded Defendants from opening for business. Among the reasons for the denial was Defendants' representation that investors would have a guaranteed stock value of $550,000 after five years or a refund of $500,000, which conflicted with a regulatory requirement that the investor's money be "at risk." Other career staff deemed Defendants' project not "credible" and "pie in the sky." The Inspector General issued a withering report, concluding that, thanks to a drumbeat of pressure applied by Mr. McAuliffe and Mr. Rodham onto Mr. Mayorkas, and then Mr. Mayorkas onto career staff, the adverse initial decision was reversed, paving the way for GreenTech to move forward, and for the grant of immigration petitions submitted by earlier investors.

8.      In addition, the Securities and Exchange Commission reportedly undertook an investigation into Defendants' marketing of security interests in GreenTech and related companies. Results of this investigation have not been made public.

4

9.      The State of Mississippi, after GreenTech defaulted on a $3 million loan, called the loan after finding that GreenTech could not document GreenTech's promised $60 million in capital investment and had fallen far short of the jobs it said GreenTech would create, among other deficiencies.

10.     Other groups of plaintiffs have sought redress from Defendants named in this action, and were awarded millions in a confession of judgment signed by several of the Defendants here.

11.     Ultimately, Defendants bilked Plaintiffs out of at least $560,000 each, which they now have little to no probability of getting back. More than that, the majority of Plaintiffs, relying on Defendants' lies, believed that they would obtain permanent residency in the United States, and thus uprooted their families and moved to this country at great expense. Plaintiffs now face the prospect of having to uproot their families once again, with the expense and stress of deportation to China looming before them.

## II.    PARTIES

12.     Defendant Terry McAuliffe ("McAuliffe") is the current Governor of Virginia and a resident of that state.

13.     Defendant Anthony Rodham ("Rodham") is a resident of the State of Virginia.

14.     Defendant Xiaolin "Charles" Wang ("Charles Wang") is a resident of the State of Virginia.

15.     Defendant American Immigration Center, LLC, ("AIC") is a Virginia limited liability company which is owned, directly or indirectly, and controlled by Defendant Charles Wang.

16.     Defendant Capital Wealth Holdings Limited ("Capital Wealth") is a British Virgin Islands company and is the parent company of WM Industries Corp. Capital Wealth Holdings Ltd. is partly owned by Charles Wang.

5

17.     Defendant GreenTech Automotive Capital A-3 GP, LLC, ("GreenTech Capital") is a Delaware limited liability company headquartered in Virginia and owned by Defendant American Immigration Center, LLC.

18.     Defendant GreenTech, is a Mississippi corporation with a primary business address in Sterling, Virginia. GreenTech is a wholly-owned subsidiary of Defendant WM Industries Corp.

19.     Defendant Gulf Coast Funds Management, LLC ("Gulf Coast"), is a Louisiana limited liability company headquartered in Virginia and owned by Defendant American Immigration Center, LLC.

20.     Defendant WM Industries Corp. ("WM Industries") is a Virginia corporation headquartered in Virginia and at all relevant times owned, directly or indirectly, by Defendants Charles Wang and Terry McAuliffe.

21.     Defendants DOES 1 through 100, are sued herein under fictitious names for the reason that their true names are unknown to Plaintiff. When such true names are ascertained, Plaintiff will amend its complaint accordingly. Each Defendant sued under such fictitious name is in some manner responsible for the wrongs and damages as alleged herein, and/or was the agent of each other defendant herein acting within the course and scope of said agency.

22.     Upon information and belief, Defendants have at all times relevant to this action acted with each other's authority and are agents of one another. Furthermore, Defendants have abused the corporate form, failed to maintain a distinction among the various entities, and used the corporate form to orchestrate a fraud such that Defendants should be found to be alter egos, the corporate veil pierced, and the corporate form disregarded. In particular, Defendants failed to respect corporate formalities, shared the same offices, had overlapping officers and directors such that Charles Wang and Mr. McAuliffe were ultimately in control of all entities, and undercapitalized some or all of the

6

entity Defendants.  In addition, as detailed in this Complaint, Defendants abused the corporate form to defraud Plaintiffs to invest in GreenTech through lies and deception.

23.     Plaintiff Xia Bi is a citizen of China and currently resides in Guangdong Province, China.

24.     Plaintiff Nian Chen is a citizen of China and currently resides in Sammamish, Washington.

25.     Plaintiff Yuanyuan Chen is a citizen of China and currently resides in Dublin, California.

26.     Plaintiff Qingli Cheng is a citizen of China and currently resides in Seattle, Washington.

27.     Plaintiff Ying Cheng is a citizen of China and currently resides in Seattle, Washington.

28.     Plaintiff Dongsheng Hu is a citizen of China and currently resides in Irvine, California.

29.     Plaintiff Jun Huang is a citizen of China and currently resides in Fremont, California.

30.     Plaintiff Kui Le is a citizen of China and currently resides in Mercer Island, Washington.

31.     Plaintiff Chunsheng Li is a citizen of China and currently resides in Fremont, California.

32.     Plaintiff Zhonghui Li is a citizen of China and currently resides in Beijing, China.

33.     Plaintiff Lin Lin is a citizen of China and currently resides in Princeton, New York.

34.     Plaintiff Lan Liu is a citizen of China and currently resides in Beijing, China.

35.     Plaintiff Ling Liu is a citizen of China and currently resides in Houston, Texas.

7

36.    Plaintiff Zheng Qin is a citizen of China and currently resides in Zhengzhou, China.

37.    Plaintiff Meiming Shen is a citizen of China and currently resides in Alhambra, California.

38.    Plaintiff Yunping Tan is a citizen of China and currently resides in Dove Canyon, California.

39.    Plaintiff Bixiang Tang is a citizen of China and currently resides in San Jose, California.

40.    Plaintiff Xiaonan Tang is a citizen of China and currently resides in Waco, Texas.

41.    Plaintiff Chun Wang is a citizen of China and currently resides in Laguna Niguel, California.

42.    Plaintiff Rui Wang is a citizen of China and currently resides in Irvine, California.

43.    Plaintiff Yahong Wang is a citizen of China and currently resides in Beijing, China.

44.    Plaintiff Yue Wang is a citizen of China and currently resides in Charlotte, North Carolina.

45.    Plaintiff Jian Wu is a citizen of China and currently resides in Brea, California.

46.    Plaintiff Lei Yan is a citizen of China and currently resides in New York, New York.

47.    Plaintiff Junping Yao is a citizen of China and currently resides in Taiyuan, China.

48.    Plaintiff Jin You is a citizen of China and currently resides in Bellevue, Washington.

49.    Plaintiff Houqian Yu is a citizen of China and currently resides in Merion Station, Pennsylvania.

50.    Plaintiff Zhen Yu is a citizen of China and currently resides in Irvine, California.

51.    Plaintiff Nianqing Zhang is a citizen of China and currently resides in Paramus, New Jersey.

8

52.     Plaintiff Xuemei Zhang is a citizen of China and currently resides in Suwanee, Georgia.

53.     Plaintiff Huibin Zhao is a citizen of China and currently resides in Brea, California.

54.     Plaintiff Yan Zhao is a citizen of China and currently resides in Brookline, Massachusetts.

## III.   JURISDICTION AND VENUE

55.     Jurisdiction is appropriate in this Court pursuant to Virginia Code sections 17.1-513, 8.01-328.1, and 8.01-330 as the majority of Defendants reside or have their principal place of business in Virginia and the causes of action alleged herein arose from business they transacted, in whole or in part, in Virginia.

56.     Venue is proper in this district pursuant to Virginia Code section 8.01-262(1) and (4) as Defendants reside or have their principal place of business in Fairfax County and parts of the causes of actions alleged herein arose in Fairfax County.

## IV.   THE FACTS

### A.   *The EB-5 Visa Program – Background, Practice, And Procedure*

57.     The Employment-Based Immigration Fifth Preference Program, or EB-5 program, was created by the Immigration Act of 1990. The program was established to stimulate the U.S. economy by giving immigrant investors, and their immediate families, the opportunity to permanently live and work in the United States after they have invested in a new commercial enterprise ("NCE").

58.     If the NCE is located in a Targeted Employment Area ("TEA"), *i.e.*, either a rural area or an area beset by high unemployment, the required equity investment is $500,000.

59.    Investors who make a qualified investment of $500,000 or more in a specified project that is determined to have created or preserved at least 10 jobs for United States workers are eligible for permanent residency in the U.S.

60.    Investments into an EB-5 program are "closed-ended," or available only to a specified number of investors, and that number is tied to the number of direct or indirect jobs created by the investment.

61.    Congress created the Immigrant Investor Pilot Program in 1993 to increase interest in the EB-5 program. This program established EB-5 Regional Centers ("Regional Centers"), which are entities that receive special designation from the USCIS to administer EB-5 investments and create jobs.

62.    EB-5 programs administered by a Regional Center are desirable because Regional Center investors can take credit not only for direct jobs created in the NCE but also "indirect jobs" created outside the NCE in a job creating enterprise ("JCE") (such as a construction contracting firm that builds an improvement for the NCE).

63.    To qualify for permanent residency, the immigrant investor first applies for an immigrant visa by submitting an Immigrant Petition for Alien Entrepreneur, known as "Form I-526."

64.    USCIS' approval of the Form I-526 is conditioned upon the immigrant's investment of the requisite amount of money in an NCE that satisfies the applicable legal requirements.

65.    Upon approval of the Form I-526 petition, the immigrant investor may either: (1) file the appropriate form to adjust their status to a "conditional permanent resident" within the United States; or (2) file an application to obtain an EB-5 visa for admission to the United States.

10

66.     Upon the approval of the application or upon entry into the United States with an EB-5 immigrant visa, the EB-5 investor and derivative family members are granted conditional permanent residence for a two-year period.

67.     To remove the conditional resident status, the immigrant investor must file a Form I-829, Petition by Entrepreneur to Remove Conditions, ninety days before the two-year anniversary of the granting of the EB-5 investor's conditional resident status.

68.     USCIS' approval of the Form I-829 is conditioned upon proof that the immigrant investor's investment has created at least ten full-time jobs in the NCE or JCE.  If an insufficient number of jobs was created, the foreign national is subject to removal from the United States.

### B.     Charles Wang, McAuliffe, And Rodham Form A Politically Connected Super Team To Exploit Chinese Investors' Interest In Migrating To America

69.     In 2008, Charles Wang, along with others, formed a company to manufacture hybrid cars that would be funded by Chinese investors interested in taking advantage of the EB-5 program. This company eventually became GreenTech.

70.     GreenTech was to build a plant in Tunica, Mississippi, with the financial assistance of the state of Mississippi, which qualifies as a Targeted Employment Area.

71.     Capital Wealth, owned by Charles Wang, became the principal investor in GreenTech, owning 75% of its common stock.

72.     Mr. McAuliffe owns or controls the remaining 25% stake in GreenTech.

73.     Mr. Rodham was added to the team to take advantage of his political connections and familiarity with EB-5 projects.  GreenTech repeatedly identified Mr. McAuliffe as the largest shareholder in the enterprise in an effort to add credibility and certainty to the potential investment.

74.     Charles Wang would have primary responsibility for operating GreenTech and would assist in recruiting Chinese investors.

11

75.     Mr. Rodham would recruit Chinese investors, take primary responsibility to structure the investments, and operate any entities needed for those investments.

76.     Mr. McAuliffe would also help recruit investors and would help push the project through regulatory authorities, including USCIS.

77.     This team, with their intimate government ties (especially to the widely admired former President Clinton), gave the impression to Chinese investors that the United States government supported the operation. This impression was intentional.

78.     To expedite the EB-5 applications, Charles Wang formed a regional center. Thus, Gulf Coast applied to become a regional center, and in August 2008, USCIS approved its application. Mr. Rodham became the President and CEO of Gulf Coast.

79.     To ensure he would have control of Gulf Coast, Charles Wang caused a company he owned, AIC, to acquire Gulf Coast.

### C.     *Through A Series Of Misrepresentations, Charles Wang, McAuliffe, And Rodham Lure The First Two Phases Of Immigrant Investors*

80.     Through their personal recruitment efforts in China and assistance from Mr. McAuliffe, by January 2012 Charles Wang and Mr. Rodham were able to recruit approximately 92 Chinese investors who became preferred stockholders of GreenTech. Each invested $500,000, for an investment of approximately $46 million (the "Preferred Stockholders").

81.     The Preferred Stockholders constitute the first two rounds of investment sought by Defendants (known as "Phase 1" and "Phase 2" Stockholders). None of the Plaintiffs are Phase 1 or 2 Stockholders.

82.     On information and belief, Defendants utilized numerous misrepresentations regarding GreenTech to recruit both these early investors and other, later investors, including its ability to generate thousands of jobs, the desirability and demand for its products, the number and

12

types of its product offerings, the number of orders the company had, and the federal government's interest in the company's offerings.

83.     On information and belief, Defendants also misrepresented the degree of risk associated with these investments.  Specifically, Defendants falsely stated that the capital invested in GreenTech was guaranteed against loss.

84.     On information and belief, Defendants falsely represented that participation in GreenTech guaranteed permanent residency in the U.S.

85.     Given the pattern of material misrepresentations and omissions, and their number, each Defendant intended to deceive the Phase 1 and 2 investors into investing in their scam.

### D.     *Charles Wang, McAuliffe, And Rodham Lure The Third Phase Of Immigrant Investors With A Dizzying Array Of Material Misrepresentations And Omissions*

86.     Despite raising around $46 million from Phase 1 and 2 investors, Defendants sought still more investment in GreenTech.

87.     For "Phase 3," Defendants marketed investors limited partnership interests in a newly formed company, GreenTech Automotive Partnership A-3, LP ("A-3 LP").

88.     From 2010 through 2013, Mr. McAuliffe, Mr. Rodham and Charles Wang participated in multiple roadshows in China to sell these partnership shares.

89.     Defendants highlighted the operation's close government ties, especially through the involvement of Mr. McAuliffe and Mr. Rodham, including that Mr. McAuliffe met with the Chinese government in 2010 to discuss GreenTech.

90.     Mr. McAuliffe, for his part, lent credence to the investment by allowing his name to be used by Mr. Rodham and Charles Wang and in promotional materials.  Mr. McAuliffe also made

numerous speeches promoting GreenTech, how it would generate hundreds of jobs, and its ultimate success.

91.     During these roadshows, speeches, and appearances, Defendants sold the investors on the certainty of the investment and their ability to immigrate to the United States at little cost as they would easily recoup their $500,000 investment. Defendants misrepresented the success GreenTech had already found since commencing operations, and claimed that GreenTech would continue to satisfy the statutory requirements, particularly as to job creation with the addition of new investors and expansion of operations.

92.     Defendants falsely stated that GreenTech was growing rapidly and had successfully obtained multiple purchase contracts for the cars already, including from the U.S. Department of Defense.

93.     Defendants emphasized how well-funded the company was, that they were supported by large investor funds, and had multiple joint venture partners.  These representations were false.

94.     Defendants falsely stated that the investment from Plaintiffs would only comprise 7.8% of the total funds GreenTech would have available to operate.

95.     Defendants falsely stated that the value of GreenTech's collateral well exceeded the amount of all the investments combined, making the investment safe for the investors.

96.     Defendants provided investors written materials describing the investment opportunity. Though they knew who they were marketing to, at no time did Defendants provide translations of the written English materials describing the investment.

97.     The private placement memorandum provided to Plaintiffs was not translated into Chinese.

98.     The subscription agreement provided to Plaintiffs was not translated into Chinese.

99.     The limited partnership agreement that Mr. Rodham signed on Plaintiff's behalf was not translated into Chinese.

100.    The power of attorney Plaintiffs signed over to Mr. Rodham as President and CEO of the general partner, GreenTech Capital, was not translated into Chinese. It was also mixed in with other paperwork, so Plaintiffs were not aware of what they had signed.

101.    Plaintiffs did not discover until recently the nature of the documents they signed, including the power of attorney.

102.    Instead, potential investors were presented with detailed newsletters and other communications in Chinese that misrepresented the nature of the investment, the status and performance of the company, the success GreenTech had already achieved and would achieve, the funding and other support GreenTech had received, and the guarantee that they would be able to obtain visas through this investment including their permanent green card.

103.    These newsletters were prepared or approved by Gulf Coast and were specifically referenced by Charles Wang and Mr. Rodham during their roadshows and meetings.

104.    In a presentation first given in December 2011, Gulf Coast stated that investors are investing in "a company that is already producing and selling new energy vehicles with high profit margins." On information and belief, these statements were false. In 2011 and 2012, GreenTech had sold no cars, and in fact still has sold no cars.

105.    In a May 2012 newsletter, Gulf Coast stated that GreenTech was expected to create 7,432 jobs, including 3,414 in Tunica, Mississippi, which would exceed the 500 jobs needed for this portion of the investment.

106.    The job figure was generated from a claim that 426 direct jobs would be generated by GreenTech and that USCIS had approved for GreenTech to use a 17.45 employment multiplier

to determine the number of indirect jobs that would be created, leading to a total of approximately 7,432 direct and indirect jobs. In fact, GreenTech has not generated even 100 jobs and the USCIS never approved the use of a 17.45 multiplier.

107.    On or about late May 2012, at a meeting in Nanjing, China, Charles Wang represented that GreenTech's patented technology was extremely advanced. On information and belief, this representation was false.

108.    On or about late May 2012, at a meeting in Nanjing, China, Charles Wang represented that GreenTech had received orders for its vehicles exceeding expected production and had a market to sell them in. On information and belief, these representations were false.

109.    On or about late May 2012, at a meeting in Nanjing, China, Charles Wang represented that GreenTech had great financial strength and no shortage of investment funds that would allow GreenTech to succeed. On information and belief, these representations were false.

110.    In the second half of 2012, at a promotional meeting in Beijing, China, Charles Wang misrepresented the ease in which investors' immigration petitions would be approved. He pointed to the approved petitions of early investors without accounting for the fact that those approvals would not continue because the mass production of cars and job creation GreenTech promised was not attainable and not credible.

111.    In a December 2012 and a January 2013 newsletter, Gulf Coast stated that GreenTech had been an approved supplier for the Department of Defense. This statement was false.

112.    In a March 2013 newsletter, Gulf Coast stated that investors would be able to recover their entire investment by the time they receive their conditioned-removed green cards. This statement was false.

113.    In the same March 2013 newsletter, Gulf Coast also stated that GreenTech had many orders from the US, UK, and Europe, with projected EU sales to be 12,000 vehicles.  This statement was false.

114.    At an April 2013 event in Nanjing, China, Charles Wang represented that GreenTech was the world's leading electric vehicle enterprise, that GreenTech had orders for cars through 2014, including orders from the U.S. Department of Defense, Europe, and other countries, and that products were in short supply.  These statements were false.

115.    Given the pattern of material misrepresentations and omissions, and their number, each Defendant intended to deceive the Plaintiffs into investing in their scam.

### E.      *In Reliance On The Material Misrepresentations And Omissions Of Charles Wang, McAuliffe, And Rodham, Each Plaintiff Invested $560,000 Or $561,000*

116.    Based on the material misrepresentations and omissions, eighty-six investors paid $500,000 each for such shares in A-3 LP, for a total of $43 million.  Thereafter, A-3, LP, loaned these proceeds to GreenTech.

117.    Defendants stated that each investor's entire investment would be returned in the event the investor's immigration application was not approved.

118.    Each EB-5 investor was required to pay an additional $60,000 (plus $1,000 if the investors chose to place their investment in an escrow account) "Administrative Fee."  On information and belief, the Administrative Fee bore no relation to the cost of administering the investment, and there is no evidence that Defendants did anything of consequence to earn it.

119.    Each of the Plaintiffs relied on some or all of the statements in these newsletters, statements on Defendants' websites and social media, and statements made at certain events before signing the subscription agreement and transferring their $500,000 investment and $60,000 or $61,000 Administrative Fee.

120.    While Plaintiffs were introduced at different times to the investment, each of them reviewed and relied on some or all of the GreenTech-issued memorandums, statements made by Defendants in person, through social media, and through their website, and on all news-letters that were provided prior to the date they signed the subscription agreement and related documents, and transferred their funds.

121.    Xia Bi signed her subscription agreement on or about September 13, 2013 and transferred her investment via wire transfer on or about July 23, 2013.

122.    Nian Chen signed his subscription agreement on or about December 4, 2013 and transferred his investment via wire transfer on or about December 12, 2013.

123.    Yuanyuan Chen signed her subscription agreement on or about July 16, 2012 and transferred her investment via wire transfer on or about September 14, 2012.

124.    Qingli Cheng signed her subscription agreement on or about April 25, 2013 and transferred her investment via wire transfer on or about April 23, 2013.

125.    Ying Cheng signed her subscription agreement on or about April 13, 2013 and transferred her investment via wire transfer on June 21, 2013.

126.    Jun Huang signed his subscription agreement on or about July 16, 2012 and transferred his investment via wire transfer on or about August 3, 2012.

127.    Dongsheng Hu signed his subscription agreement on or about August 23, 2012 and transferred his investment via wire transfer on or about August 23, 2012.

128.    Kui Le signed her subscription agreement on or about April 15, 2013 and transferred her investment via wire transfer on or about July 15, 2013.

129.    Zhonghui Li signed her subscription agreement on or about April 26, 2013 and transferred her investment via wire transfer on or about May 24, 2013.

130.    Chunsheng Li signed his subscription agreement on or about August 16, 2012 and transferred his investment via wire transfer on or about July 23, 2012.

131.    Lin Lin signed her subscription agreement or about September 13, 2012 and transferred her investment via wire transfer on or about September 13, 2012.

132.    Lan Liu signed her subscription agreement on or about January 15, 2013 and transferred her investment via wire transfer on or about January 23, 2013.

133.    Ling Liu signed her subscription agreement on or about June 25, 2012 and transferred her investment via wire transfer on or about July 26, 2012.

134.    Zheng Qin signed her subscription agreement on or about November 5, 2012 and transferred her investment via wire transfer on or about December 18, 2012.

135.    Meiming Shen signed his subscription agreement on or about July 30, 2012 and transferred his investment via wire transfer on or about July 31, 2012.

136.    Yunping Tan signed her subscription agreement and transferred her investment via wire transfer on or about May 24, 2013.

137.    Bixiang Tang signed his subscription agreement on or about July 12, 2012 and transferred his investment via wire transfer on or about July 25, 2012.

138.    Xiaonan Tang signed his subscription agreement on or about August 16, 2012 and transferred his investment via wire transfer on or about November 22, 2012.

139.    Rui Wang signed her subscription agreement on or about September 7, 2012 and transferred her investment via wire transfer on or about November 6, 2012.

140.    Yahong Wang signed her subscription agreement on or about July 16, 2013 and transferred her investment via wire transfer on or about August 14, 2013.

19

141.   Yue Wang signed her subscription agreement on or about August 24, 2012 and transferred her investment via wire transfer on or about August 29, 2012.

142.   Chun Wang signed his subscription agreement on or about December 19, 2012 and transferred his investment via wire transfer on or about January 23, 2013.

143.   Jian Wu signed his subscription agreement on or about August 15, 2012 and transferred his investment via wire transfer on or about September 28, 2012.

144.   Lei Yan signed her subscription agreement on or about September 12, 2012 and transferred her investment via wire transfer on or about September 10, 2012.

145.   Junping Yao signed his subscription agreement and transferred his investment via wire transfer on or about August 12, 2012.

146.   Jin You signed his subscription agreement on or about March 6, 2013 and transferred his investment via wire transfer on or about March 3, 2013.

147.   Houqian Yu signed his subscription agreement on or about March 21, 2013 and transferred his investment via wire transfer on or about April 2, 2013.

148.   Zhen Yu transferred her investment via wire transfer on or about December 12, 2012.

149.   Nianqing Zhang signed his subscription agreement on or about July 28, 2012 and transferred his investment via wire transfer on or about September 20, 2012.

150.   Xuemei Zhang signed her subscription agreement on or about March 1, 2013 and transferred her investment via wire transfer on or about December 3, 2013.

151.   Huibin Zhao signed his subscription agreement on or about June 15, 2012 and transferred his investment via wire transfer on or about August 31, 2012.

152.   Yan Zhao signed his subscription agreement on or about April 12, 2013 and transferred his investment via wire transfer on or about April 19, 2013.

20

**F.      Defendants Concealed Their Fraud And Deceit To Prevent Plaintiffs From Discovering Their Scam**

153.      Defendants' lies and deceit continued after Plaintiffs made their investments in GreenTech. Defendants sought to ensure that Plaintiffs would not discover their fraud or withdraw their investment. In the meantime, Defendants paid themselves a small fortune in excessive compensation.

154.      Charles Wang received a $500,000 annual salary for being the Chief Executive Officer and President of GreenTech.

155.      Gulf Coast, which is owned indirectly by Charles Wang and for which Mr. Rodham is President and CEO, received $250,000 bi-annually for managing the investment funds in connection with the first rounds of funding from the Preferred Stockholders.

156.      In addition, Gulf Coast received an annual management fee of 1.5% of the total commitments made by the limited partners who bought into GreenTech Automotive Partnership A-3, LP. This fee was as high as $750,000 annually once the limited partnership was fully funded.

157.      Mr. McAuliffe received $120,000 in annual compensation.

158.      Because Defendants have never provided Plaintiffs with a proper, verified, independent accounting of their expenditures, it is unknown how much of Plaintiffs' investment capital Defendants misappropriated for themselves, or whether they paid themselves excessive compensation in other ways.

159.      In order to continue receiving compensation, Defendants misrepresented the state of GreenTech, its facility, its car production, its job projections, and its expected and committed sales.

160.      In 2013, Gulf Coast, with the help of GreenTech, gave a tour of its Tunica, Mississippi facility to show the manufacturing work it was doing.  On information and belief,

21

employees were just pretending to look busy on instructions from management, rather than manufacturing any cars.

161.   In 2013, to deflect any concerns that might arise from investors concerning news reports about potential investigations into GreenTech, GreenTech and Charles Wang stated that after a joint investigation by six U.S. government agencies, GreenTech had been confirmed to be problem free. This representation was false.

162.   Charles Wang further claimed that it had sued two entities, including Watchdog.org, for spreading rumors about GreenTech, and that Watchdog.org had paid $1.2 million in damages. These representations were false. In fact, the law suit filed against Watchdog.org was dismissed for lack of jurisdiction in Mississippi.

163.   In January, May, and November 2015 newsletters, Gulf Coast highlighted the job creation that GreenTech was undertaking and pointed to additional hiring. On information and belief, employees were mostly sitting idly by, and were hired only to give the impression of growth.

164.   In a November 2015 newsletter, Gulf Coast emphasized that production would reach 3,000 cars in January 2016. On information and belief, GreenTech has assembled less than 50 cars, and sold no cars.

165.   In an April 2016 newsletter, Gulf Coast again emphasized GreenTech's relationship with potential car buyers, claiming it had established relationships with two dealers. On information and belief, GreenTech never sold cars through dealers, or otherwise.

166.   In a November 2015 newsletter, Gulf Coast claimed that GreenTech was working toward an IPO and planned to go public in the near future. This representation was reinforced in an April 2016 newsletter which stated that GreenTech was making great progress toward its initial public offering or IPO. GreenTech never had an IPO, and was never reasonably on target for one.

167.    Plaintiffs relied on these misrepresentations, kept their investments in GreenTech, and never sought alternative investment vehicles.

168.    In addition, in reliance on these misrepresentations, numerous Plaintiffs took advantage of the provisional visa, uprooted themselves and their families from China, and moved to the United States.

169.    As a result of Defendants' misrepresentations, these Plaintiffs now face the prospect of losing their immigration status, having to uproot their families once again and move back to China, and losing their invested capital and any return on that capital which would have been used in the United States as Plaintiffs built their lives here.

**G.      Defendants Attempt To Push Their Flawed Business Plan Through The Regulatory Process With Misdirection And Heavy-Handed Political Pressure**

170.    Defendants knew that their plan for GreenTech was unlikely to produce the employment numbers required for final approval of all the 200 plus EB-5 investors Defendants recruited. Thus, Defendants relied on elaborate models that inflated employment numbers.

171.    These models met with initial success from USCIS, but soon USCIS became skeptical of GreenTech's ability to generate such employment numbers because GreenTech was making little to no progress in its business plan, in manufacturing cars, and in selling them.

172.    Instead of relying on the merits of their models, Defendants attempted to use their political connections, including those of Mr. McAuliffe and Mr. Rodham, to push through approval of the investors' EB-5 applications.

173.    As a result of what the Department of Homeland Security's Inspector General described as the "courageous" actions of employee "whistleblowers," these contacts are detailed in a report of the Office of the Inspector General dated March 24, 2015. The Inspector General labelled

23

the "number and variety" of whistleblowers willing to come forward and discuss the impropriety between GreenTech and USCIS's director as "highly unusual."[1]

174.    The report details Homeland Security career staff's concerns that GreenTech was falsely and unlawfully marketing the investments as "guaranteed." The report explains that one whistleblower testified that the "consensus" of career staff was that the number of jobs promised by GreenTech was "ridiculous." It explains that one whistleblower testified that the "consensus" of career staff was that GreenTech's application was not "credible." It further notes that another whistleblower testified that GreenTech's project was "pie in the sky."

175.    The report mentions at least fifteen (15) communications, including emails and telephone calls, from Mr. McAuliffe to USCIS and its Director, Alejandro Mayorkas.    These communications were often expletive filled and meant to pressure USCIS to grant the applications of GreenTech's EB-5 investors. Counsel for GreenTech and other representatives, including Mr. Rodham, also attempted to exert similar pressure on USCIS and Mr. Mayorkas.

176.    As a result of this pressure, Mr. Mayorkas engaged in what staff called a "highly improper" action by interfering with, and rewriting, an adverse action drafted by career appellate staff that "would have been decided differently" but for the favoritism.

177.    As a result of this decision, EB-5 applications were initially granted, and amendments to increase the scope of Gulf Coast's regional center designation were granted.

178.    The Inspector General concluded that Mr. Mayorkas, in part through his decisions related to GreenTech, created an appearance of favoritism and special access, generating "significant resentment in USCIS."

---

[1] The Inspector General's report did not come to Plaintiffs' attention until after they began investigating possible wrongdoing by GreenTech in the second half of 2016.

179.    As a result of the heavy-handed lobbying by Mr. McAuliffe and Mr. Rodham (and their agents), and the improper regulatory actions it gave rise to, investors continued to invest in GreenTech, or declined to withdraw their funds.  Thus, for GreenTech's investors, the "successful" lobbying efforts undertaken by Mr. McAuliffe and Mr. Rodham (and their agents) were counter-productive, induced reliance, and caused and exacerbated their injury.

### H.    Defendants Misrepresentations And Misconduct Poisoned The Immigration Application Process And Generated More Adverse Government Findings

180.    Defendants' dishonesty and malfeasance infected some of the immigration petitions submitted by Phase 3 investors. This process generated still more findings from disinterested government staff that GreenTech was not a credible company, and lacked a credible plan.

181.    In denying one Form I-526 petition based on the GreenTech business, the USCIS found that the evidence of record did not establish that at least 10 full time jobs would be created.

182.    The USCIS was also unable to substantiate numerous assertions in GreenTech's 2012 business plan.  In many cases, GreenTech did not provide the necessary paper work to support many assertions regarding GreenTech's 2012 business plan.

183.    The USCIS found numerous inconsistencies in the materials provided by GreenTech. The USCIS also found that these materials failed to substantiate numerous claims by GreenTech.

184.    The USCIS found discrepancies in the employment rolls at GreenTech, including at least three employees listed as being employed in both Tunica and Horn Lake, Mississippi.

185.    The USCIS also found that a declaration by GreenTech's Corporate Finance Director, made under penalty of perjury, was not credible. The declaration asserted two suppliers were within 225 miles of the Tunica facility, when in fact the two suppliers were no closer than 370 miles from Tunica.

25

186.     The USCIS further deemed GreenTech's 2015 business plan not credible. Among other things, the record was insufficient to demonstrate the prediction that GreenTech would have 250 direct jobs by 2018.

187.     According to USCIS, GreenTech did not provide the necessary paper work to support many assertions, including that in November 2015, GreenTech passed the testing for European Union L7e certification, or that in December 2015, GreenTech would furnish a vehicle to a US certified testing facility to complete the NEV American certification

### I.     *Plaintiffs Discover Their Injury And Defendants' Elaborate Scheme*

188.     In the second half of 2016, Plaintiffs began to grow suspicious of GreenTech's activities. Despite Defendants' promises and assurances GreenTech had yet to turn a profit or begin significant sales of its hybrid cars by then.

189.     Plaintiffs started to receive notices that USCIS was denying certain investors' I-526 applications and that production was going to stop at GreenTech.

190.     GreenTech has been unable to raise any further funding and has been unable to obtain an investment from another company. Thus, GreenTech has been unable to fully refund investors who have requested refunds.

191.     GreenTech has also been unable to hire the number of employees needed to satisfy USCIS's employment requirements for the pending EB-5 applications, let alone the number of employees necessary for GreenTech to be a going concern.

192.     On September 16, 2016, the state of Mississippi began a review of GreenTech to verify compliance with its Memorandum of Understanding, the loan agreement and security agreement between the Mississippi Development Authority and GreenTech.

193.     The state of Mississippi concluded that GreenTech defaulted on the loan agreement.

194.    The state of Mississippi also concluded that GreenTech did not comply with the Memorandum of Understanding because GreenTech did not invest the required $60 million dollars.

195.    The state of Mississippi also concluded that GreenTech did not comply with the Memorandum of Understanding because GreenTech failed to create 350 full-time jobs by December 31, 2014 and failed to maintain the new jobs.

196.    Faced with these developments that sharply contradicted prior newsletters and updates about the company, and GreenTech's general lack of progress, Plaintiffs began their investigation into Defendants' activities, culminating in this action.

**J.    *Veil Piercing***

197.    Charles Wang, Mr. McAuliffe, and Mr. Rodham are proper defendants and individually, jointly, and severally liable.   Use of the corporate form does not shield them in any part.

198.    Charles Wang, Mr. McAuliffe, and Mr. Rodham engaged in fraudulent behavior and self-dealing that the corporate form does not shield.

199.    The various corporations deployed by Charles Wang, Mr. McAuliffe, and Mr. Rodham, on information and belief, did not follow corporate formalities, including formalities regarding regular meetings, shareholder meetings, board oversight, or the keeping of formal corporate minutes.

200.    The various corporations deployed by Charles Wang, Mr. McAuliffe, and Mr. Rodham were inadequately capitalized.

201.    Either one or very few related people controlled the various corporations deployed by Charles Wang, Mr. McAuliffe, and Mr. Rodham in perpetuating their scam.

## V.    CLAIMS FOR RELIEF

### COUNT I

**Fraud in the Inducement**
**Against Defendants Terry McAuliffe; Anthony Rodham; Charles Wang; American Immigration Center, LLC; Capital Wealth Holdings, Ltd.; GreenTech Automotive, Inc.; Gulf Coast Funds Management, LLC; WM Industries Corp.; and DOES 1-100**

202.    Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

203.    Defendants Charles Wang, Mr. Rodham, and Mr. McAuliffe, individually and through their companies, GreenTech, Gulf Coast, American Immigration Center, LLC, WM Industries Corp., and Capital Wealth Holdings, Ltd., sought to induce Chinese investors, including Plaintiffs, to invest in GreenTech and in particular to buy limited partnership interests in GreenTech Automotive Partnership A-3, LP. Thus, Defendants made or ratified the misrepresentations detailed above.

204.    At the time the misrepresentations were made, Defendants knew that they were false or that they were made with reckless indifference to the truth.

205.    Through these misrepresentations, Defendants intended to induce Plaintiffs to rely on the misrepresentations, and to buy limited partnership interests at a price of $500,000 each, so the money could be invested in GreenTech.

206.    Each Plaintiff reasonably relied on these misrepresentations in signing the subscriber agreement and related documents without reviewing any version, either because no such version was provided, or they did not understand the version provided, and each wiring their $500,000 investment for the benefit of GreenTech, as instructed.

207.    Plaintiffs were harmed by Defendants' misconduct, and their reliance on the misrepresentations was a substantial factor in causing that harm. Specifically, without limitation,

Plaintiffs each invested $500,000 in GreenTech Automotive Partnership A-3, LP and paid a $60,000 or $61,000 "Administrative Fee."

208. Numerous Plaintiffs, relying on the misrepresentations made by Defendants when or before Plaintiffs signed the subscription agreement and transferred their investments, also moved to the United States under a provisional visa and incurred substantial relocation expenses.

209. In addition, Plaintiffs lost other investment opportunities that they could have pursued had they known that Defendants' representations were false. Such opportunities would have allowed Plaintiffs to immigrate to the United States with little likelihood that their EB-5 applications would be denied.

210. Further, Defendants' statements about the investments not having any risk, including refunding the money, were contrary to and in violation of the EB-5 visa rules and requirements. Plaintiffs relied on Defendants' misrepresentations about the risk of the investment, as well as Defendants' statements that the "risk-free" investment could be used in the EB-5 application. Thus, through Defendants' fraudulent behavior, Plaintiffs were induced into making an investment that could not be used as a basis for Plaintiffs' EB-5 visa applications.

211. Plaintiffs have been harmed by Defendants' actions in an amount to be proven at trial, but in no event less than $560,000 or $561,000 each, plus interest.

212. Defendants' conduct alleged herein constitutes actual fraud and was malicious and oppressive, entitling Plaintiffs to punitive damages. Such conduct includes lying to investors knowing that some of the investors, in reliance on their misrepresentations, would move across the world to start new lives in the United States when Defendants knew it was unlikely that Plaintiffs' final visa applications would be approved.

## COUNT II

### Fraud
### Against Defendants Terry McAuliffe; Anthony Rodham; Charles Wang; American Immigration Center, LLC; Capital Wealth Holdings, Ltd.; GreenTech Automotive, Inc.; Gulf Coast Funds Management, LLC; WM Industries Corp.; and DOES 1-100

213.    Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

214.    Defendants Charles Wang, Mr. Rodham, and Mr. McAuliffe, individually and through their companies, GreenTech, Gulf Coast, American Immigration Center, LLC, WM Industries Corp., and Capital Wealth Holdings, Ltd., sought to ensure that Plaintiffs would not withdraw their investment from GreenTech Automotive Partnership A-3, LP, and that they would believe that their EB-5 applications would be granted and therefore, not seek other investments. Thus, Defendants made or ratified the misrepresentations detailed above.

215.    At the time the misrepresentations were made, Defendants knew that they were false or that they were made with reckless indifference to their truth.

216.    Through these misrepresentations, Defendants intended to induce reliance so that Plaintiffs would forego looking at other investments, looking too closely to the activities of GreenTech, or withdrawing their funds from the limited partnership, which would have had devastating effects on GreenTech.

217.    Plaintiffs reasonably relied on these misrepresentations and were lulled into believing that GreenTech was a bonafide going concern that would provide the required number of jobs that would allow Plaintiffs to immigrate to the United States while providing a significant return on their investment.

218.    Plaintiffs were harmed by Defendants' misconduct, and their reliance on the misrepresentations was a substantial factor in causing that harm. Specifically, without limitation,

30

Plaintiffs did not seek to withdraw each of their $500,000 investments in GreenTech Automotive Partnership A-3, LP or reimbursement of the $60,000 or $61,000 "Administrative Fee."

219.    All Plaintiffs except Zheng Qin, Lan Liu, Junping Yao, Xia Bi, Zhonghui Li, and Yahong Wang, relying on the viability of the company Defendants represented after Plaintiffs signed the subscription agreement and transferred their investments, also moved to the United States under a provisional visa and incurred substantial relocation expenses.

220.    In addition, Plaintiffs lost other investment opportunities that they could have pursued had they known that Defendants' representations were false.  Such opportunities would have allowed Plaintiffs to immigrate to the United States with little likelihood that their EB-5 applications would be denied.

221.    Further, Defendants' statements about the investments not having any risk, including refunding the money, were contrary to and in violation of the EB-5 visa rules and requirements. Plaintiffs relied on Defendants' misrepresentations about the risk of the investment, as well as Defendants' statements that the "risk-free" investment could be used in the EB-5 application. Thus, through Defendants' fraudulent behavior, Plaintiffs made an investment that could not be used as a basis for Plaintiffs' EB-5 visa applications.

222.    Plaintiffs have been harmed by Defendants' actions in an amount to be proven at trial, but in no event less than $560,000 or $561,000 each, plus interest.

223.    Defendants' conduct alleged herein constitutes actual fraud and was malicious and oppressive, entitling Plaintiffs to punitive damages.  Such conduct includes lying to investors knowing that some of the investors, in reliance on their misrepresentations, would move across the world to start new lives in the United States when Defendants knew it was unlikely that Plaintiffs'

31

final visa applications would be approved, and that the investors would not have the opportunity to seek alternative means to remain in the United States in their new lives.

### COUNT III

**Federal Securities Fraud, 15 U.S.C. §§ 78j(b) and 17 C.F.R. § 240.10b-5
Against Defendants Terry McAuliffe; Anthony Rodham; Charles Wang; American
Immigration Center, LLC; Capital Wealth Holdings, Ltd.; GreenTech Automotive, Inc.;
Gulf Coast Funds Management, LLC; WM Industries Corp.; and DOES 1-100**

224.    Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

225.    Defendants Charles Wang, Mr. Rodham, and Mr. McAuliffe, individually and through their companies, GreenTech, Gulf Coast, American Immigration Center, LLC, WM Industries Corp., and Capital Wealth Holdings, Ltd., sought to induce Chinese investors to buy limited partnership interests in GreenTech Automotive Partnership A-3, LP. Thus, Defendants made, ratified, or controlled the making of, the misrepresentations detailed above.

226.    At the time the misrepresentations were made, Defendants knew that they were false or that they were made with reckless indifference to the truth.

227.    Defendants intended to induce Plaintiffs to rely on these misrepresentations and buy limited partnership interests in GreenTech Automotive Partnership A-3, LP at a price of $500,000 each, so the money could be invested in GreenTech.

228.    Each Plaintiff reasonably relied on these misrepresentations in purchasing the limited partnership interests, signing the subscriber agreement without reviewing any version, either because no such version was provided, or Plaintiffs did not understand the version provided, and each wiring their $500,000 investment for the benefit of GreenTech as instructed.

229.    Plaintiffs were harmed by Defendants' misconduct, and their reliance on the misrepresentations was a substantial factor in causing that harm. Specifically, without limitation,

32

Plaintiffs each invested $500,000 in GreenTech Automotive Partnership A-3, LP and paid a $60,000 or $61,000 "Administrative Fee" on an essentially worthless security.

230.   All Plaintiffs except Zheng Qin, Lan Liu, Junping Yao, Xia Bi, Zhonghui Li, and Yahong Wang, relying on the viability of the company Defendants represented when or before Plaintiffs signed the subscription agreement and transferred their investments, also moved to the United States under a provisional visa and incurred substantial relocation expenses.

231.   In addition, Plaintiffs lost other investment opportunities that they could have pursued had they known that Defendants' misrepresentations were false.  Such opportunities would have allowed Plaintiffs to immigrate to the United States with little likelihood that their EB-5 applications would be denied.   None of the losses would have occurred but for Defendants' misrepresentations.

232.   Further, Defendants' statements about the investments not having any risk, including refunding the money, were contrary to and in violation of the EB-5 visa rules and requirements. Plaintiffs relied on Defendants' misrepresentations about the risk of the investment, as well as Defendants' statements that the "risk-free" investment could be used in the EB-5 application. Thus, through Defendants' fraudulent behavior, Plaintiffs were induced into making an investment that could not be used as a basis for Plaintiffs' EB-5 visa applications.

233.   Plaintiffs have been harmed by Defendants' actions in an amount to be proven at trial, but in no event less than $560,000 or $561,000 each, plus interest.

## COUNT IV

**Securities Fraud Pursuant to Mississippi Code § 75-71-509**
**Against Defendants Terry McAuliffe; Anthony Rodham; Charles Wang; American Immigration Center, LLC; Capital Wealth Holdings, Ltd.; GreenTech Automotive, Inc.; Gulf Coast Funds Management, LLC; WM Industries Corp.; and DOES 1-100**

234. Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

235. Defendants Charles Wang, Mr. Rodham, and Mr. McAuliffe, individually and through their companies, GreenTech, Gulf Coast, American Immigration Center, LLC, WM Industries Corp., and Capital Wealth Holdings, Ltd., sought to induce Chinese investors to buy limited partnership interests in GreenTech Automotive Partnership A-3, LP. Thus, they made, ratified, or controlled the making of, the untrue statements detailed above for that purpose. A number of these misrepresentations and an offer to sell the partnership interests originated in Mississippi.

236. At the time the misrepresentations were made Defendants knew that they were false or that they were made with reckless indifference to the truth. Plaintiffs did not know and could not have known that the misrepresentations were false as the true information was within Defendants' exclusive control.

237. Defendants intended to induce Plaintiffs to rely on the misrepresentations and buy limited partnership interests in GreenTech Automotive Partnership A-3, LP at a price of $500,000 each, so the money could be invested in GreenTech.

238. Each Plaintiff reasonably relied on these misrepresentations in purchasing the limited partnership interests, signing the subscriber agreement without reviewing any version, either because no such version was provided, or they did not understand the version that was provided, and each wiring their $500,000 investment for the benefit of GreenTech as instructed.

239. Plaintiffs were harmed by Defendants' misconduct and their reliance on the misrepresentations was a substantial factor in causing that harm. Specifically, without limitation,

34

Plaintiffs each invested $500,000 in GreenTech Automotive Partnership A-3, LP and paid a $60,000 or $61,000 "Administrative Fee" on an essentially worthless security.

240. All Plaintiffs except Zheng Qin, Lan Liu, Junping Yao, Xia Bi, Zhonghui Li, and Yahong Wang, relying on the viability of the company Defendants represented when or before Plaintiffs signed the subscription agreement and transferred their investments, also moved to the United States under a provisional visa and incurred substantial relocation expenses.

241. In addition, Plaintiffs lost other investment opportunities that they could have pursued had they known that Defendants' misrepresentations were false. Such opportunities would have allowed Plaintiffs to immigrate to the United States with little likelihood that their EB-5 applications would be denied. None of the losses would have occurred but for Defendants' misrepresentations.

242. Further, Defendants' statements about the investments not having any risk, including refunding the money, were contrary to and in violation of the EB-5 visa rules and requirements. Plaintiffs relied on Defendants' misrepresentations about the risk of the investment, as well as Defendants' statements that the "risk-free" investment could be used in the EB-5 application. Thus, through Defendants' fraudulent behavior, Plaintiffs were induced into making an investment that could not be used as a basis for Plaintiffs' EB-5 visa applications.

243. Plaintiffs have been harmed by Defendants' actions in an amount to be proven at trial, but in no event less than $560,000 or $561,000 each, plus interest.

244. Defendants' conduct alleged herein constitutes actual fraud and was malicious and oppressive, entitling Plaintiffs to punitive damages. Such conduct includes lying to investors knowing that some of the investors, in reliance on their misrepresentations, would move across the world to start new lives in the United States when Defendants knew it was unlikely that Plaintiffs'

final visa applications would be approved.  In addition, pursuant to Mississippi Code § 75-71-509(b),

Plaintiffs are entitled to an award of attorneys' fees for bringing this action.

## COUNT V

### Breach of Fiduciary Duty
### Against Defendants Anthony Rodham; Charles Wang; American Immigration Center, LLC; GreenTech Automotive Capital A-3 GP, LLC;  Gulf Coast Funds Management, LLC; and DOES 1-20

245.    Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

246.    Defendant GreenTech Automotive Capital A-3 GP, LLC, as the general partner of GreenTech Automotive Partnership A-3, LP, and Mr. Rodham as its President and CEO, owed Plaintiffs as limited partners fiduciary duties of care and loyalty.  Defendant Gulf Coast, its President and CEO Mr. Rodham as the manager of the limited partnership, and its owner and alter ego American Immigration Center, LLC owed fiduciary duties of care and loyalty to Plaintiffs as limited partners.  Defendant Charles Wang, as indirect owner and as the person ultimately in control of both Gulf Coast and GreenTech Automotive Capital A-3 GP, also owed fiduciary duties of care and loyalty to Plaintiffs as limited partners.

247.    Defendants breached their fiduciary duties to Plaintiffs first through their fraud and deception in leading Plaintiffs to believe that GreenTech was a successful company that would be able to meet and was meeting its obligations, would provide a return on their investment, and would provide Plaintiffs' visas.  Defendants further breached their fiduciary duties by failing to make GreenTech a going concern and instead engaging in waste by receiving excessive compensation from GreenTech, including close to $1.25 million in annual compensation to Gulf Coast and $500,000 in compensation to Charles Wang.

248. As a result of Defendants' breaches, Plaintiffs were harmed. Specifically, without limitation, Plaintiffs have each lost their $500,000 investment in GreenTech Automotive Partnership A-3, LP as GreenTech has become worthless due to Defendants' misconduct. Plaintiffs each also lost $60,000 or $61,000 on the "Administrative Fee" required to purchase the now worthless investment. Defendants' breaches have also caused Plaintiffs to be left without an investment to serve as the basis of their immigration application, likely resulting in the loss of any immigration status they currently have.

249. Defendants' conduct alleged herein constitutes actual fraud and was malicious and oppressive entitling Plaintiff to punitive damages. Such conduct includes lying to investors knowing that some of the investors, in reliance on their misrepresentations, would move across the world to start new lives in the United States when Defendants knew it was unlikely that Plaintiffs' final visa applications would be approved, and that the investors would not have the opportunity to seek alternative means to remain in the United States in their new lives.

250. Further, Defendants' statements about the investments not having any risk, including refunding the money, were contrary to and in violation of the EB-5 visa rules and requirements. Plaintiffs relied on Defendants' misrepresentations about the risk of the investment, as well as Defendants' statements that the "risk-free" investment could be used in the EB-5 application. Thus, through Defendants' fraudulent behavior, Plaintiffs were induced into making an investment that could not be used as a basis for Plaintiffs' EB-5 visa applications.

## COUNT VI

### Accounting
**Against Defendants Anthony Rodham; Charles Wang; American Immigration Center, LLC; Capital Wealth Holdings, Ltd.; GreenTech Automotive Capital A-3 GP, LLC; Gulf Coast Funds Management, LLC; and DOES 1-20**

251.    Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

252.    Defendant GreenTech Automotive Capital A-3 GP, LLC as the general partner of GreenTech Automotive Partnership A-3, LP, and Mr. Rodham as its President and CEO, owed Plaintiffs as limited partners fiduciary duties of care and loyalty.  Defendant Gulf Coast, its President and CEO Mr. Rodham, as the manager of the limited partnership, and its owner and alter ego American Immigration Center, LLC owed fiduciary duties of care and loyalty to Plaintiffs as limited partners.  Defendant Charles Wang, as indirect owner and as the person ultimately in control of both Gulf Coast and GreenTech Automotive Capital A-3 GP, also owed fiduciary duties of care and loyalty to Plaintiffs as limited partners.  Defendants each breached their fiduciary duties as set forth herein and Plaintiffs are entitled to an accounting of how the funds they invested in GreenTech Automotive Partnership A-3, LP have been used by Defendants.

253.    In addition, as limited partners in GreenTech Automotive Partnership A-3, LP, Plaintiffs are entitled to and hereby request an accounting of all partnership funds from GreenTech Automotive Capital A-3 GP, LLC, the general partner, and Gulf Coast, the manager of the limited partnership.

## COUNT VII

**Aiding and Abetting Breach of Fiduciary Duty**
**Against Defendants Terry McAuliffe; Charles Wang; Capital Wealth Holdings, Ltd.;**
**GreenTech Automotive, Inc.; WM Industries Corp.; and DOES 21-100**

254.    Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

255.    Defendant GreenTech Automotive Capital A-3 GP, LLC as the general partner of GreenTech Automotive Partnership A-3, LP, and Mr. Rodham as its President and CEO, owed

Plaintiffs as limited partners fiduciary duties of care and loyalty. Defendant Gulf Coast, its President and CEO Mr. Rodham, as the manager of the limited partnership, and its owner and alter ego American Immigration Center, LLC owed fiduciary duties of care and loyalty to Plaintiffs as limited partners. Defendant Charles Wang, as indirect owner and as the person ultimately in control of both Gulf Coast and GreenTech Automotive Capital A-3 GP, also owed fiduciary duties of care and loyalty to Plaintiffs as limited partners. Each of these Defendants breached their fiduciary duties to Plaintiffs as set forth herein.

256.    Defendants Terry McAuliffe, GreenTech, WM Industries Corp., Capital Wealth Holdings, and Charles Wang knowingly assisted in the breaches of fiduciary duty by Defendants Rodham, GreenTech Automotive Capital A-3 GP, Gulf Coast, American Immigration Center, LLC and/or Charles Wang. Charles Wang and GreenTech assisted Mr. Rodham, GreenTech Automotive Capital A-3 GP, Gulf Coast, and American Immigration Center, LLC including by helping deceive Plaintiffs as to the status of GreenTech, its committed sales, and its car production.

257.    Mr. McAuliffe further assisted Charles Wang, Mr. Rodham, GreenTech Automotive Capital A-3 GP, and Gulf Coast by pushing the EB-5 investors' visa applications through USCIS despite knowing that those applications would ultimately be denied because GreenTech would be unable to generate the required number of jobs.

258.    As a result of such aiding and abetting, Plaintiffs were harmed. Specifically, without limitation, Plaintiffs have each lost their $500,000 investment in GreenTech Automotive Partnership A-3, LP as GreenTech has become worthless due to Defendants' misconduct. Plaintiffs each also lost $60,000 or $61,000 on the "Administrative Fee" required to purchase the now worthless investment. Defendants' breaches have also caused Plaintiffs to be left without an investment to

39

serve as the basis of their immigration application, likely resulting in the loss of any immigration status they currently have.

259.    Defendants conduct alleged herein constitutes actual fraud and was malicious and oppressive entitling Plaintiffs to punitive damages.   Such conduct includes lying to investors knowing that some of the investors, in reliance on their misrepresentations, would move across the world to start new lives in the United States when Defendants knew it was unlikely that Plaintiffs' final visa applications would be approved, and that the investors would not have the opportunity to seek alternative means to remain in the United States in their new lives.

260.    Further, Defendants' statements about the investments not having any risk, including refunding the money, were contrary to and in violation of the EB-5 visa rules and requirements. Plaintiffs relied on Defendants' misrepresentations about the risk of the investment, as well as Defendants' statements that the "risk-free" investment could be used in the EB-5 application. Thus, through Defendants' fraudulent behavior, Plaintiffs were induced into making an investment that could not be used as a basis for Plaintiffs' EB-5 visa applications.

## COUNT VIII

### Conspiracy to Commit Fraud and Breach Fiduciary Duties
### Against Defendants Terry McAuliffe; Anthony Rodham; Charles Wang; American Immigration Center, LLC; Capital Wealth Holdings, Ltd.; GreenTech Automotive Capital A-3 GP, LLC: GreenTech Automotive, Inc.; Gulf Coast Funds Management, LLC; WM Industries Corp.; and DOES 1-100

261.    Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

262.    Defendants conspired to defraud Plaintiffs and to breach the fiduciary duties GreenTech Automotive Capital A-3 GP, LLC, Mr. Rodham, Gulf Coast, American Immigration Center, LLC and Charles Wang owed to Plaintiffs.  Such an agreement is evidenced by the intricate

web of interrelated entities Defendants created to fund GreenTech, as well as by the deceit and lies that also furthered the conspiracy and allowed Defendants to raise significant funds from Plaintiffs while they were lulled into believing that they were funding an investment that would provide a return on their monies while allowing them to immigrate to the United States.

263.    Defendants committed acts in furtherance of the conspiracy including by providing Plaintiffs with false information so they would each invest $500,000 for the benefit of GreenTech as alleged above, making false statements and misleading Plaintiffs to believe that GreenTech was using the funds provided to operate a growing and successful car manufacturer as alleged above, and by pushing through the applications of the EB-5 investors despite reservations expressed by USCIS and the likelihood that GreenTech would not be able to generate the required number of jobs to finalize Plaintiffs immigration status.

264.    As a result of Defendants' concerted actions, Plaintiffs were harmed. Specifically, without limitation, Plaintiffs have each lost their $500,000 investment in GreenTech Automotive Partnership A-3, LP as GreenTech has become worthless due to Defendants' misconduct. Plaintiffs' have also each lost $60,000 or $61,000 in fees due to Defendants' actions and conspiracy. Defendants' conspiracy has also caused Plaintiffs to be left without an investment to serve as the basis of their immigration application, likely resulting in the loss of any immigration status they currently have.

265.    Defendants' conduct alleged herein constitutes actual fraud and was malicious and oppressive entitling Plaintiffs to punitive damages. Such conduct includes lying to investors knowing that some of the investors, in reliance on their misrepresentations, would move across the world to start new lives in the United States when Defendants knew it was unlikely that Plaintiffs'

final visa applications would be approved, and that the investors would not have the opportunity to seek alternative means to remain in the United States in their new lives.

266.    Further, Defendants' statements about the investments not having any risk, including refunding the money, were contrary to and in violation of the EB-5 visa rules and requirements. Plaintiffs relied on Defendants' misrepresentations about the risk of the investment, as well as Defendants' statements that the risk-free investment could be used in the EB-5 application. Thus, through Defendants' fraudulent behavior, Plaintiffs were induced into making an investment that could not be used as a basis for Plaintiffs' EB-5 visa applications.

## COUNT IX

### Breach of Contract
### Against Defendants Anthony Rodham; Charles Wang; American Immigration Center, LLC; GreenTech Automotive Capital A-3 GP, LLC; and Gulf Coast Funds Management, LLC; and WM Industries Corp.

267.    Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

268.    On or about March 1, 2012, Plaintiffs, GreenTech Automotive Capital A-3 GP, LLC, and Gulf Coast entered into the Amended and Restated Limited Partnership Agreement for GreenTech Automotive Partnership A-3 LP (the "Limited Partnership Agreement"). Pursuant to the Limited Partnership Agreement, Gulf Coast was to be the manager of the limited partnership and GreenTech Automotive Capital A-3 GP, LLC, the general partner.

269.    Plaintiffs performed all obligations required of them under the Limited Partnership Agreement.

270.    Gulf Coast and GreenTech Automotive Capital A-3 GP, LLC breached the Limited Partnership Agreement by failing to abide by their obligations as the manager and the general partner. Instead of protecting the interests of Plaintiffs, the limited partners, they sought to enrich

themselves and their affiliate companies and indirect owners, including GreenTech, American Immigration Center, LLC, and Charles Wang.  Gulf Coast, American Immigration Center, LLC and GreenTech Automotive Capital A-3 GP, LLC actively deceived Plaintiffs as to the status of GreenTech to ensure they would not withdraw from the investment, and lead Plaintiffs to believe that GreenTech was a bonafide going concern.

271.    As a result of Defendants' breaches, Plaintiffs were harmed.  Specifically, without limitation, Plaintiffs have each lost their $500,000 investment in GreenTech Automotive Partnership A-3, LP as GreenTech has become worthless due to Defendants' misconduct.  Plaintiffs' have also each lost $60,000 or $61,000 in fees due to Defendants' misconduct. Defendants' breaches have also caused Plaintiffs to be left without an investment to serve as the basis of their immigration application, likely resulting in the loss of any immigration status they currently have.

### COUNT X

**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**Against Defendants Anthony Rodham; Charles Wang; American Immigration Center, LLC;**
**GreenTech Automotive Capital A-3 GP, LLC; and Gulf Coast Funds Management, LLC**

272.    Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

273.    On or about March 1, 2012, Plaintiffs, GreenTech Automotive Capital A-3 GP, LLC, and Gulf Coast entered into the Amended and Restated Limited Partnership Agreement for GreenTech Automotive Partnership A-3 LP.  Pursuant to that agreement, Gulf Coast was to be the manager of the limited partnership and GreenTech Automotive Capital A-3 GP, LLC, the general partner.

274.    The law implies a covenant of good faith and fair dealing into every contract to ensure that one party does not frustrate the fruits of the bargain reasonably expected by the other party.

275.    Plaintiffs reasonably expected that Gulf Coast and GreenTech Automotive Capital A-3 GP, LLC would do their utmost to help GreenTech succeed and reach the employment numbers needed for Plaintiffs to finalize their EB-5 applications.  Instead, Defendants frustrated that purpose and sought to enrich themselves and their affiliate companies and indirect owners, including GreenTech, American Immigration Center, and Charles Wang.   Gulf Coast and GreenTech Automotive Capital A-3 GP, LLC actively deceived Plaintiffs as to the status of GreenTech to ensure they would not withdraw from the investment, and lead them to believe that GreenTech was a bonafide going concern.

276.    As a result of Defendants' breaches, Plaintiffs were harmed.  Specifically, without limitation, Plaintiffs have each lost their $500,000 investment in GreenTech Automotive Partnership A-3, LP as GreenTech has become worthless due to Defendants' misconduct.  Plaintiffs' have also each lost $60,000 or $61,000 in fees due to Defendants' misconduct. Defendants' breaches have also caused Plaintiffs to be left without an investment to serve as the basis of their immigration application, likely resulting in the loss of any immigration status they currently have.

## COUNT XI

### Unjust Enrichment
**Against Defendants Anthony Rodham; Charles Wang; American Immigration Center, LLC; GreenTech Automotive Capital A-3 GP, LLC; GreenTech Automotive, Inc.; and Gulf Coast Funds Management, LLC**

277.    Plaintiffs restate and incorporate by reference as if set forth fully herein the allegations set forth in paragraphs 1 through 201 above.

278.    To the extent Defendants' fraud nullifies the contracts between Plaintiffs and Defendants, Plaintiffs conferred a benefit on Defendants by each providing approximately $560,000 to operate GreenTech. Defendants knowingly received and retained that benefit.

279.   It would be unjust and inequitable for Defendants to retain those funds because they were obtained under false pretenses and were not used to make GreenTech into a successful company that would allow Plaintiffs to finalize their EB-5 applications and obtain permanent residency in the United States.  Instead, Defendants used the monies to enrich themselves and their affiliate companies and indirect owners, including GreenTech, American Immigration Center, and Charles Wang.

280.   Thus, in the interests of justice and equity, Defendants should be ordered to return to each Plaintiff the approximately $560,000 or $561,000, plus interest, they took from each of the Plaintiffs.

## VI.   REQUEST FOR RELIEF

Plaintiffs respectfully requests that this Court:

A. Enter judgment for Plaintiffs and jointly and severally against all Defendants on the above claims for relief;

B. For compensatory damages in the amount to be proven at trial but presently estimated to be in excess of $17,920,000 in lost investment capital, plus the interest accrued between the date of the investment and the date of this Complaint;

C. For compensatory damages in the amount to be proven at trial but presently estimated to be in excess of $17,920,000 for actual and/or lost opportunity costs associated with the inability of Plaintiffs to permanently relocate to and reside in the United States, as promised;

C. For restitution, disgorgement of profits, or other equitable relief;

D. For punitive damages in an amount not less than three times compensatory damages;

E. For an accounting;

F. For removal of the general partner of GreenTech Automotive Partnership A-3, L.P.;

45

G. For attorneys' fees and costs, in an amount according to proof pursuant to the Mississippi Securities Act of 2010, Mississippi Code § 75-71-509, and pursuant to Virginia Supreme Court Rule 3:25 and as permitted in *Devine v. Buki*, 289 Va. 162, 178 (2015) ("This Court has repeatedly recognized that, 'in a fraud suit, a chancellor, in the exercise of his discretion, may award attorney's fees to a defrauded party.'") (citations omitted) as a result of Defendants' fraud;

H. For prejudgment and postjudgment interest; and

I. For any such other relief as this Court deems just and proper.

## VII.   DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 22, 2017

Respectfully submitted,

XIA BI, NIAN CHEN, YUANYUAN CHEN, QINGLI CHENG, YING CHENG, DONGSHENG HU, JUN HUANG, KUI LE, CHUNSHENG LI, ZHONGHUI LI, LIN LIN, LAN LIU, LING LIU, ZHENG QIN, MEIMING SHEN, YUNPING TAN, BIXIANG TANG, CHUN WANG, RUI WANG, YAHONG WANG, YUE WANG, JIAN WU, LEI YAN, JUNPING YAO, JIN YOU, ZHEN YU, XIAONAN TANG, HOUQIAN YU, NIANQING ZHANG, XUEMEI ZHANG, HUIBIN ZHAO, and YAN ZHAO

By Counsel

Gerard P. Fox
GERARD FOX LAW P.C.
1880 Century Park E #1410
Los Angeles, CA 90067

Scott M. Abeles
Jonathan D. Link (Virginia Bar No.: 42951)
GERARD FOX LAW P.C.
3050 K Street NW Ste. 210
Washington, D.C. 20007
Telephone: (202) 664-5585
Facsimile: (310) 441-4447
jlink@gerardfoxlaw.com

*Attorneys for Plaintiffs*

46

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

```
----------------------------------- X
```
XIA BI, NIAN CHEN, YUANYUAN CHEN,
QINGLI CHENG, VING CHENG,
DONGSHENG HU, JUN HUANG, KUI LE,
CHUNSHENG LI, ZHONGHUI LI, LIN LIN,
LAN LIU, LING LIU, ZHENG QIN, MEIMING
SHEN, YUNPING TAN, BIXIANG TANG,
XIAONAN TANG, CHUN WANG, RUI WANG,
YAHONG WANG, XUE WANG, JIAN WU, LEI
YAN, YUNPING YAO, JIN YOU, ZHEN YU,
HOUQIAN YU, XIANQING ZHANG, XUEMEI
ZHANG, HUIBIN ZHAO, and YAN ZHAO,

                   Plaintiffs,

    v.

TERRY MCAULIFFE, ANTHONY RODHAM,
XIAOLIN "CHARLES" WANG, AMERICAN
IMMIGRATION CENTER, LLC, a Virginia
limited liability company, CAPITAL WEALTH
HOLDINGS LIMITED, a British Virgin Islands
company, GREENTECH AUTOMOTIVE
CAPITAL A-3 GP, LLC, a Delaware limited
liability company, GREENTECH
AUTOMOTIVE, INC., a Mississippi corporation,
GULF COAST FUNDS MANAGEMENT, LLC,
a Louisiana limited liability company, WM
INDUSTRIES CORP., a Virginia corporation, and
DOES 1-100,

                   Defendants.

Case No.: **2017   16552**

```
----------------------------------- X
```

## SERVICE REQUESTED FOR DEFENDANTS

For the following Defendant, we request service by the Sheriff of Fairfax County:

(1)    Terry McAuliffe: 7527 Old Dominion Drive, McLean, VA 22102.

For the following Defendants, we request service by a Private Process Server:

(2)    Xiaolin "Charles" Wang: 11301 Kellie Jean Ct., Great Falls, VA 22066-1376.

(3)   Anthony Rodham: 1666 Beulah Rd., Vienna, VA 22182.

(4)   GreenTech Automotive, Inc.: registered agent for service of process, Corporation Service Company, Bank of America Center, 1111 East Main St., 16th Floor, Richmond, VA 23219.

(5)   Gulf Coast Funds Management, LLC: registered agent for service of process, Scott W. Pohlman, 10511 Judicial Dr., Fairfax, VA 22030.

(6)   GreenTech Automotive Capital A-3 GP, LLC: registered agent for service of process, Corporation Service Company, Bank of America Center, 1111 East Main St., 16th Floor, Richmond, VA 23219.

(7)   American Immigration Center, LLC: registered agent for service of process, Gulf Coast Funds Management, LLC, 21355 Ridgetop Circle, Suite 250, Lakeside at Loudoun Tech Center III, Sterling, VA 20166.

(8)   WM Industries Corp.: registered agent for service of process, Corporation Service Company, Bank of America Center, 1111 East Main St., 16th Floor, Richmond, VA 23219.

(9)   Capital Wealth Holdings, Ltd: registered agent for service of process, Newhaven Trustees (BVI) Limited, 3rd Floor, J&C Building, P.O. Box 933, Road Town, Tortola, British Virgin Islands, VG1110.

DATED: November 22, 2017

Respectfully Submitted,

GERARD FOX LAW, P.C.

By counsel.

Jonathan D. Link

Jonathan D. Link (Virginia Bar No.: 42951)
jlink@gerardfoxlaw.com
GERARD FOX LAW P.C.
3050 K Street N.W.
Washington, D.C. 20007
Telephone: (202) 664-5585
Facsimile: (310) 441-4447

3

072013

## FAIRFAX COUNTY CIRCUIT COURT

## PROOF OF SERVICE

**Xia Bi et al. vs. Terry Mcauliffe et al.**

2017 NOV 30  P 2: 22

CL-2017-0016552
**Case Type:  Complaint & Summons**

TO:   **Terry Mcauliffe**
**7527 Old Dominion Drive**
**McLean VA 22102**

SPRing HILL

**Fairfax County**

### SHERIFFS USE ONLY:

☐  **Personal Service**

☒  **Being unable to make personal service, a copy was delivered in the following manner:**

☐  **Delivered to person found in charge of usual place of business or employment during business hours and giving information of its purport.** _____

_____

☐  **Delivered to family member (not temporary sojourner or guest) age 16 or older at usual place of abode of party named above after giving information of its purport.  List name, age of recipient, and relation of recipient to party named above.**
unable to make contact / posted to front Door

☒  **Posted on front door or such other door as appears to be the main entrance of usual place of abode, address listed above. (Other authorized recipient not found)**

☐  **Served on Secretary of the Commonwealth**

☐  **Served on the Clerk of the State Corporation Commission pursuant to Virginia Code §8.01-513**

☐  **Served on registered agent of the corporation.  List name and title:**
_____

☐  **Served on the Commissioner of the Department of Motor Vehicles**

☐  **Not found**

1021A

12-1-17
Date

Stacey A Kincaid
Sheriff

By:  Pat Mueller  12/13
Serving Deputy Sheriff

FT
City or County of Locality

## CIRCUIT COURT FOR FAIRFAX COUNTY, VIRGINIA

Xia Bi, et al.

          **Plaintiff**

    *vs.*    **Case No: CL-2017-0016552**

Terry McAuliffe, et al.

          **Defendant**

### AFFIDAVIT OF SERVICE

I, Robert Proffitt, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Summons and Complaint in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this matter.

That on 12/04/2017 at 12:38 PM, I served Anthony Rodham with the Summons and Complaint at 1666 Beulah Road, Vienna, Virginia 22182, by serving Anthony Rodham, personally.

Anthony Rodham is described herein as:

Gender: Male   Race/Skin: White   Age: 62   Weight: 250   Height: 5'10"   Hair: Gray   Glasses: No

I do solemnly declare and affirm under penalty of perjury that I have read the foregoing information set forth herein is correct to the best of my knowledge, information, and belief.

Sworn to before me on  12/04/17

_____
Angela H. Croson
Notary Public District of Columbia
My Commission Expires: March 31, 2019

_____
Robert Proffitt

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

Client Ref Number:1653.16!
Job #: 153662

## CIRCUIT COURT FOR FAIRFAX COUNTY, VIRGINIA

Xia Bi, et al.

FILED
COURT SERVICES

2017 DEC -8 AM 10: ⌐

JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX CO.

                                        Plaintiff

                                                        **Case No: CL-2017-0016552**

                                                *vs.*

Terry McAuliffe, et al.

                                        Defendant

### AFFIDAVIT OF SERVICE

I, Robert Proffitt, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Summons and Complaint in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 12/04/2017 at 1:06 PM, I served American Immigration Center LLC c/o Gulf Coast Funds Management LLC, Registered Agent with the Summons and Complaint at Lakeside at Loudoun Tech Center III, 21355 Ridgtop Circle, Suite 250, Sterling, Virginia 20166 by serving Chris McClear, Officer, authorized to accept service.

Chris McClear is described herein as:

Gender: Male   Race/Skin: White   Age: 56   Weight: 200   Height: 5'9"   Hair: Brown   Glasses: Yes

I do solemnly declare and affirm under penalty of perjury that I have read the foregoing information set forth herein is correct to the best of my knowledge, information, and belief.

Sworn to before me on 12/04/17

Angela H. Croson
Notary Public District of Columbia
My Commission Expires: March 31, 2019

Robert Proffitt

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

Client Ref Number:1653.1695
Job #: 1536631

S

## CIRCUIT COURT FOR FAIRFAX COUNTY, VIRGINIA

Xia Bi, et al.

**Plaintiff**

*vs.*   **Case No: CL-2017-0016552**

**Terry Mcauliffe, et al.**

Defendant

## AFFIDAVIT OF SERVICE

I, Kenneth V. Condrey, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Summons and Complaint in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 12/05/2017 at 1:30 PM, I served GreenTech Automotive Capital A3 GP LLC c/o Corporation Service Company, Registered Agent with the Summons and Complaint at Bank of America Center, 1111 East Main Street, 16th Floor, Richmond, Virginia 23219 by serving Rene Nordquist, Designated Agent, authorized to accept service.

Rene Nordquist is described herein as:

Gender: Female   Race/Skin: White   Age: 55   Weight: 165   Height: 5'8"   Hair: Blonde   Glasses: Yes

I do solemnly declare and affirm under penalty of perjury that I have read the foregoing information set forth herein is correct to the best of my knowledge, information, and belief.

Sworn to before me on 12-7-17

Notary Public
My Commission Expires: 10-31-21

Kenneth V. Condrey

Client Ref Number:1653.1695
Job #: 1536632

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

## CERTIFICATE
## OF
## CORPORATION SERVICE COMPANY

**THIS CERTIFICATE MADE** pursuant to Subsection 2(b) of Section 13.1-634, Subsection 2(b) of Section 13.1-763, Subsection 2(b) of Section 13.1-1015 and Section 50-73.4 of the Virginia Code.

**CORPORATION SERVICE COMPANY**, a corporation authorized to do business in the Commonwealth of Virginia, does hereby certify that:

1.   It is incorporated under the Laws of the State of Delaware and was authorized to do business in Virginia on June 1, 2001.

2.   (a)   It maintains a business office in the Commonwealth of Virginia at Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, VA 23219.

(b)   Service of process may be made at such business office in the City of Richmond upon corporations, limited liability companies, partnerships, trusts and other entities, associations and persons which have designated it as agent for service of process.

(c)   The names of the individuals authorized to receive process served upon Corporation Service Company as the agent for service of process of any corporations, limited liability companies, partnerships, trust and other entities, associations and persons which have designated it as such agent are:

| | | |
|---|---|---|
| Beverley L. Crump | Rene Nordquist | Meda Sterrett |
| Pamela Frazier | Linda B. Liles | Dustin Kline |
| Donna Creekmore | | |

**WHEREFORE,** Corporation Service Company has caused its corporate name to be hereunto subscribed this **17** day of June 2015.

CORPORATION SERVICE COMPANY

BY: _____
George A. Massih III, Vice President

STATE OF DELAWARE
COUNTY OF NEW CASTLE

The foregoing instrument was acknowledged before me this **17** day of June 2015, by George A. Massih III.

_____
Notary Public

My Commission Expires: **7-16-16**

## CIRCUIT COURT FOR FAIRFAX COUNTY, VIRGINIA

Xia Bi, et al.

Plaintiff

vs.                    **Case No: CL-2017-0016552**

Terry Mcauliffe, et al.

Defendant

## AFFIDAVIT OF SERVICE

I, Kenneth V. Condrey, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Summons and Complaint in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 12/05/2017 at 1:30 PM, I served GreenTech Automotive Inc. c/o Corporation Service Company, Registered Agent with the Summons and Complaint at Bank of America Center, 1111 East Main Street, 16th Floor, Richmond, Virginia 23219 by serving Rene Nordquist, Designated Agent, authorized to accept service.

Rene Nordquist is described herein as:

Gender: Female   Race/Skin: White   Age: 55   Weight: 165   Height: 5'8"   Hair: Blonde   Glasses: Yes

I do solemnly declare and affirm under penalty of perjury that I have read the foregoing information set forth herein is correct to the best of my knowledge, information, and belief.

Sworn to before me on 12-7-17

Notary Public
My Commission Expires 12-31-21

NOTARY
PUBLIC
REG. #355099
MY COMMISSION
EXPIRES
10/31/2021
COMMONWEALTH OF VIRGINIA

Kenneth V. Condrey

Client Ref Number:1653.1695
Job #: 1536633

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

## CERTIFICATE
### OF
### CORPORATION SERVICE COMPANY

**THIS CERTIFICATE MADE** pursuant to Subsection 2(b) of Section 13.1-634, Subsection 2(b) of Section 13.1-763, Subsection 2(b) of Section 13.1-1015 and Section 50-73.4 of the Virginia Code.

**CORPORATION SERVICE COMPANY**, a corporation authorized to do business in the Commonwealth of Virginia, does hereby certify that:

1.  It is incorporated under the Laws of the State of Delaware and was authorized to do business in Virginia on June 1, 2001.

2.  (a)  It maintains a business office in the Commonwealth of Virginia at Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, VA 23219.

    (b)  Service of process may be made at such business office in the City of Richmond upon corporations, limited liability companies, partnerships, trusts and other entities, associations and persons which have designated it as agent for service of process.

    (c)  The names of the individuals authorized to receive process served upon Corporation Service Company as the agent for service of process of any corporations, limited liability companies, partnerships, trust and other entities, associations and persons which have designated it as such agent are:

    | | | |
    |---|---|---|
    | Beverley L. Crump | Rene Nordquist | Meda Sterrett |
    | Pamela Frazier | Linda B. Liles | Dustin Kline |
    | Donna Creekmore | | |

**WHEREFORE**, Corporation Service Company has caused its corporate name to be hereunto subscribed this 17 day of June 2015.

STATE OF DELAWARE
COUNTY OF NEW CASTLE

CORPORATION SERVICE COMPANY

BY: _____
George A. Massih III, Vice President

The foregoing instrument was acknowledged before me this 17 day of June 2015, by George A. Massih III.

_____
Notary Public

My Commission Expires: 7-16-16

## CIRCUIT COURT FOR FAIRFAX COUNTY, VIRGINIA

Xia Bi, et al.

Plaintiff

vs.                          Case No: CL-2017-0016552

Terry McAuliffe, et al.

Defendant

### AFFIDAVIT OF SERVICE

I, Benjamin Schollnick, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Summons and Complaint in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 12/04/2017 at 3:00 PM, I served Gulf Coast Funds Management LLC c/o Scott W. Pohlman, Registered Agent with the Summons and Complaint at 10511 Judicial Drive, Fairfax, Virginia 22030 by serving Carolyn Patterson, Designated Agent (see attached notarized letter), authorized to accept service.

Carolyn Patterson is described herein as:

Gender: Female   Race/Skin: White   Age: 44   Weight: 165   Height: 5'10"   Hair: Blonde   Glasses: No

I do solemnly declare and affirm under penalty of perjury that I have read the foregoing information set forth herein is correct to the best of my knowledge, information, and belief.

Sworn to before me on 12/04/17

_____
Angela H. Croson
Notary Public District of Columbia
My Commission Expires: March 31, 2019

_____
Benjamin Schollnick

Client Ref Number:1653.1695
Job #: 1536627

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050



# Hale ❉ Ball
Carlson Baumgartner Murphy PLC

Scott W. Pohlman
SPohlman@Haleball.com
Direct: 703-591-8350

April 1, 2015

RE:    **SERVICE**

To Whom It May Concern:

Please be advised that I represent certain companies in the Commonwealth of Virginia.  In the event any such company is sued and service is to be made upon myself in my capacity of registered agent for the company, I hereby authorize my Legal Assistant, Carolyn L. Patterson, to accept service on my behalf.

Scott W. Pohlman, Esq.

STATE OF VIRGINIA          :
COUNTY OF FAIRFAX          :

SUBSCRIBED and sworn to before me this _____ day of April, 2015, by Scott W. Pohlman, who is personally known to me.

Notary Public

My Commission Expires: 8-31-19

Commission No.: 131902

CAROLYN ANN BRUCE
NOTARY PUBLIC
REG # 131902
MY COMMISSION EXPIRES
8/31/2019
COMMONWEALTH OF VIRGINIA

## CIRCUIT COURT FOR FAIRFAX COUNTY, VIRGINIA

Xia Bi, et al.

Plaintiff

vs.                    **Case No: CL-2017-0016552**

Terry Mcauliffe, et al.

Defendant

## AFFIDAVIT OF SERVICE

I, Kenneth V. Condrey, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Summons and Complaint in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 12/05/2017 at 1:30 PM, I served WM Industries Corp c/o Corporation Service Company, Registered Agent with the Summons and Complaint at Bank of America Center, 1111 East Main Street, 16th Floor, Richmond, Virginia 23219 by serving Rene Nordquist, Designated Agent, authorized to accept service.

Rene Nordquist is described herein as:

Gender: Female   Race/Skin: White   Age: 55   Weight: 165   Height: 5'8"   Hair: Blonde   Glasses: Yes

I do solemnly declare and affirm under penalty of perjury that I have read the foregoing information set forth herein is correct to the best of my knowledge, information, and belief.

Sworn to before me on  12-07-17

_____
Notary Public
My Commission Expires:  10-31-21

_____
Kenneth V. Condrey

Client Ref Number:1653.1695
Job #: 1536634

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

KAREN L. RICE
NOTARY PUBLIC
REG. #355099
MY COMMISSION
EXPIRES
10/31/2021
COMMONWEALTH OF VIRGINIA

CERTIFICATE
OF
CORPORATION SERVICE COMPANY

THIS CERTIFICATE MADE pursuant to Subsection 2(b) of Section 13.1-634, Subsection 2(b) of Section 13.1-763, Subsection 2(b) of Section 13.1-1015 and Section 50-73.4 of the Virginia Code.

CORPORATION SERVICE COMPANY, a corporation authorized to do business in the Commonwealth of Virginia, does hereby certify that:

1. It is incorporated under the Laws of the State of Delaware and was authorized to do business in Virginia on June 1, 2001.

2. (a) It maintains a business office in the Commonwealth of Virginia at Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, VA 23219.

   (b) Service of process may be made at such business office in the City of Richmond upon corporations, limited liability companies, partnerships, trusts and other entities, associations and persons which have designated it as agent for service of process.

   (c) The names of the individuals authorized to receive process served upon Corporation Service Company as the agent for service of process of any corporations, limited liability companies, partnerships, trust and other entities, associations and persons which have designated it as such agent are:

   Beverley L. Crump          Rene Nordquist          Meda Sterrett
   Pamela Frazier             Linda B. Liles          Dustin Kline
   Donna Creekmore

WHEREFORE, Corporation Service Company has caused its corporate name to be hereunto subscribed this 17 day of June 2015.

CORPORATION SERVICE COMPANY

BY: _____
George A. Massih III, Vice President

STATE OF DELAWARE
COUNTY OF NEW CASTLE

The foregoing instrument was acknowledged before me this 17 day of June 2015, by George A. Massih III.

_____
Notary Public

My Commission Expires: 7-16-16

# CIRCUIT COURT OF FAIRFAX COUNTY

## CIVIL CASE SUMMARY SHEET

Xia Bi et al.

　　vs.

Terry Mcauliffe et al.

**CASE FILE NUMBER:   CL-2017-0016552**

**Date Filed:   11/22/2017**

**Case Type:   Complaint - Legal Cause of Action**

**Plaintiff Attorney:   Jonathan D. Link**

# CIVIL INTAKE
## SHEET

CIVIL ACTION NUMBER:   CL-_____ - __2017  16552__

HOW RECEIVED:   COUNTER

JUDGMENT AMOUNT: $ 35,840.00 Milton

FILING FEE: $ 346 +12 ____ CHECK ✓ CASH ____ MO ____ CREDIT CARD____

CREDIT CARD FEE: $ _____

TOTAL AMOUNT: $ 358.00        VS-4 FORM:     YES____ NO____

CLERKS INITIALS: ___LO_____        ID Presented (CWP): _____

---

SERVICE TYPE:

SHERIFF: ___1___    SPS: __✓__
                    RM: _____
OPUB: _____      CM: _____

SOC:_____ DMV:_____ SCC:_____

| SHERIFF | AMOUNT |
|---------|--------|
| $       | 12.    |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

SPECIAL INSTRUCTIONS:

CERTIFIED COPIES: _____

Complaint

Fairfax Circuit Court
Circuit Court
Receipt No. 755676
Receipt Date: 11/22/2017 11:38 AM

Received of:    Link,Jonathan                                                                                    $        358.00

Three Hundred Fifty Eight and 00/100
Xia Bi et al.  vs.  Terry Mcauliffe et al.

Filer(s): Bi, Xia; Chen, Nian

| Case | Amount |
|------|--------|
| CL-2017-0016552 | |
| Complaint ($500,000.01 and above) | 346.00 |
| Sheriff's Service Fee | 12.00 |

|  | Total: | 358.00 |
|--|--------|--------|
|  | Balance due court: $ | 0.00 |
|  | Next due date: | |

Payment Method: Check (Number: 1537)
Amount Tendered:           358.00
Overage:                         0.00
Change Due:                    0.00

John T. Frey, Clerk of Circuit Court

By:    _____
           Deputy Clerk
           Clerk: LOLMST

## FAIRFAX CIRCUIT COURT
## CIVIL CASE COVERSHEET

2017 16552

**Parties:**

| Plaintiffs | Defendants |
|---|---|
| 1. Xia Bi | 1. Terry McAuliffe |
| 2. Nian Chen | 2. Anthony Rodham |
| 3. See Addendum for complete list of Plaintiffs. | 3. See Addendum for complete list of Defendants. |

**\*Plaintiff proceeding without Counsel – Address and Daytime Phone Number required on Complaint**

**Plaintiff Attorney:**

Name: **Jonathan D. Link**                    Bar ID: **42951**

Firm: **Gerard Fox Law, P.C.**

Street: **3050 K Street NW, Suite 210**

City: **Washington, D.C.**          State:          Zip: **20007**

Phone Number: **(202) 664-5585**          Fax Number: **(310) 441-4447**

E-mail Address: **jlink@gerardfoxlaw.com**

*(stamp: 2017 NOV 22 AM 11:34 FILED CIVIL INTAKE JOHN T. FREY CLERK, CIRCUIT COURT FAIRFAX, VA)*

**Nature of Complaint** (Check only one)          **\* Cases in the Civil Tracking Program**

| | | |
|---|---|---|
| Administrative Appeal | Defamation * | Malpractice – Medical * |
| Affirmation of Marriage | Delinquent Taxes * | Mechanics/Vendors Lien * |
| Aid & Guidance | Eminent Domain | Partition * |
| Appeal Decision of Board of Zoning | Encumber/Sell Real Estate | Personal Injury – Assault * |
| Appeal of Process/Judicial Appeal | Erroneous Assessments | Personal Injury – Auto * |
| Appointment Church/Organization Trustees | Expungement | Personal Injury – Emotional * |
| Arbitration | False Arrest/Imprisonment* | Personal Injury – Premises Liability* |
| Attachment | Fiduciary/Estate Complaint | Property Damage* |
| Complaint – Equity * | Garnishment–Federal–180 days | Products Liability* |
| ✓ Complaint – Legal Cause of Action * | Garnishment–Wage–180 days | Quiet Title * |
| Compromise Settlement | Garnishment–Other – 90 days | Real Estate * |
| Condemnation* | Guardian/Conservator Adult | Restoration of Driving Privilege |
| Confession of Judgment | Guardianship/Minor | Vital Record Correction |
| Construction * | Injunction | Writ Habeas Corpus |
| Contract * | Interpleader | Writ Mandamus |
| Conversion* | Insurance * | Wrongful Death* |
| Court Satisfaction of Judgment | Judicial Review | Wrongful Discharge * |
| Declare Death | Malicious Prosecution * | OTHER: |
| Declaratory Judgment * | Malpractice – Legal * | |

**Damages in the amount of $** Excess of 35,840,000 **are claimed.**

**Requested Service:** Sheriff ✓ Private Process Server ✓ DMV Secretary of Commonwealth
State Corporation Commission Publication No Service at this time

2017   16552

## Addendum to Civil Cover Sheet (CCR D-90)

**Parties:**

| | Plaintiffs | | Defendants |
|---|---|---|---|
| 3. | Yuanyuan Chen | 3. | Xiaolin "Charles" Wang |
| 3. | Qingli Cheng | 4. | American Immigration Center, LLC |
| 4. | Ying Cheng | 5. | Capital Wealth Holdings Limited |
| 5. | Dongsheng Hu | 6. | Greentech Automotive Capital A-3 GP, LLC |
| 6. | Jun Huang | 7. | Greentech Automotive, Inc. |
| 7. | Kui Le | 8. | Gulf Coast Funds Management, LLC |
| 8. | Chunsheng Li | 9. | WM Industries Corp. |
| 9. | Zhonghui Li | 10. | Does 1-100 |
| 10. | Lin Lin | | |
| 11. | Lan Liu | | |
| 12. | Ling Liu | | |
| 13. | Zheng Qin | | |
| 14. | Meiming Shen | | |
| 15. | Yunping Tan | | |
| 16. | Bixiang Tang | | |
| 17. | Xiaonan Tang | | |
| 18. | Chun Wang | | |
| 19. | Rui Wang | | |
| 20. | Yahong Wang | | |
| 21. | Yue Wang | | |
| 22. | Jian Wu | | |
| 23. | Lei Yan | | |
| 24. | Junping Yao | | |
| 25. | Jin You | | |
| 26. | Zhen Yu | | |
| 27. | Houqian Yu | | |
| 28. | Nianqing Zhang | | |
| 29. | Xuemei Zhang | | |
| 30. | Huibin Zhao | | |
| 31. | Yan Zhao | | |

FILED
CIVIL INTAKE
2017 NOV 22 AM 11: 34
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

Fairfax Circuit Court
Circuit Court
Receipt No. 756251
Receipt Date: 11/29/2017 10:00 AM

Received of:   CL 2017 16552,McGEEHAN PASCALE, PLC                    $      25.00

Twenty Five and 00/100

| Fine/Fee | Amount |
| --- | --- |
| 236 Copy Fee | 25.00 |
| Total: | 25.00 |

Balance due court:  $      0.00
Next due date:

Payment Method: Cash
Amount Tendered:          25.00
Overage:                  0.00
Change Due:               0.00

John T. Frey, Clerk of Circuit Court

By: _____
       Deputy Clerk
       Clerk: HTIPU0

# FINAL DISPOSITION

Fiduciary #: _____

Case # 2017 16552

| DEFENDANTS        Date Final | | Final Order #1 | Final Order #2 | Final Order #3 | Final Order #4 |
|---|---|---|---|---|---|
| 1. | TRIAL-JURY                          (TJ) | | | | |
| 2. | TRIAL-JUDGE w/WITNESS          (TNJ) | | | | |
| 3. | DEFAULT JUDGMENT                (DJ) | | | | |
| 4. | SETTLEMENT                        (SETL) | | | | |
| 5. | NONSUIT                               (NS) | | | | |
| 6. | VOLUNTARY DISMISSAL            (DIS) | | | | |
| 7. | DECREE ON DEPOSITION          (DD) | | | | |
| 8. | REPORT BY COMMISSIONER      (FDCR) | | | | |
| Other Comments: | OTHER –                     (FO) (SJ) (FD) | | | | |
| | GARNISHMENT | | | | |
| | CONCEALED WEAPON PERMIT | | | | |
| | APPT CHURCH TRUSTEES/Substitute FID | | | | |
| | NAME CHANGE | | | | |
| | PURGED AFTER 2 YEARS            (2YO) | | | | |
| | PURGED AFTER 3 YEARS            (3YO) | | | | |
| E.H. Date:_____ | | | | | |
| E.H. Date:_____ | | | | | |

| | TRIAL DATE | NUMBER OF JURY DAYS | FINAL ALL DEFENDANTS | CLERK'S OFFICE |
|---|---|---|---|---|
| 1. | | | | |

| | RE-OPEN DATE | REMAND        (REM) REINSTATE    (REI) MISTRIAL       (MIS) | MOTION TYPE | RE-CLOSE DATE | CLERK'S OFFICE |
|---|---|---|---|---|---|
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |

Civil Intake – Final Disposition Form

Updated 9/2008