# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

XIA BI, NIAN CHEN, YUANYUAN CHEN,
QINGLI CHENG, YING CHENG,
DONGSHENG HU, JUN HUANG, KUI LE,
CHUNSHENG LI, ZHONGHUI LI, LIN LIN,
LAN LIU, LING LIU, ZHENG QIN, MEIMING
SHEN, YUNPING TAN, BIXIANG TANG,
XIAONAN TANG, CHUN WANG, RIU
WANG, YAHONG WANG, YUE WANG, JIAN
WU, LEI YAN, JUNPING YAO, JIN YOU,
ZHEN YU,
HOUQIAN YU, NIANQING ZHANG, XUEMEI
ZHANG, HUIBIN ZHAO, and YAN ZHAO,

     Plaintiffs,

v.

     CASE NO. 1-17-cv-01459-CMH-IDD

TERRY MCAULIFFE, ANTHONY RODHAM,
XIAOLIN "CHARLES" WANG, AMERICAN
IMMIGRATION CENTER, LLC, a Virginia
limited liability company, CAPITAL WEALTH
HOLDINGS LIMITED, a British Virgin Islands
company, GREENTECH AUTOMOTIVE
CAPITAL A-3 GP, LLC, a Delaware limited
liability company, GREENTECH
AUTOMOTIVE, INC., a Mississippi corporation,
GULF COAST FUNDS MANAGEMENT, LLC,
a Louisiana limited liability company, WM
INDUSTRIES CORP., a Virginia corporation,
and DOES 1-100,

     Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANT TERRY MCAULIFFE'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND.......................................... 3

III.  ARGUMENT ...................................................................................................... 5

    A.  PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF
    CAN BE GRANTED...................................................................................... 5

        1.  Plaintiffs Fail to State Claims for Fraud in the Inducement and
        Fraud ................................................................................................ 5

        2.  Plaintiffs Fail to State a Claim for Federal Securities Fraud under
        15 U.S.C. § 78j(b) and 17 C.F.R § 240.10b-5 and Securities Fraud
        Pursuant to Mississippi Code § 75-71-509 ................................... 10

        3.  Plaintiffs Fail to State a Claim for Aiding and Abetting Breach of
        Fiduciary Duty .............................................................................. 14

        4.  Plaintiffs Fail to State a Claim for Conspiracy to Breach Fiduciary
        Duty or Commit Fraud................................................................... 15

        5.  Plaintiffs Cannot Pierce the Corporate Veil................................. 16

    B.  PLAINTIFFS' CLAIMS AGAINST MR. MCAULIFFE ARE TIME
    BARRED ...................................................................................................... 18

        1.  Plaintiffs' Aiding and Abetting and Conspiracy to Commit a
        Breach of Fiduciary Duty Claims Are Time Barred.............................. 18

        2.  Plaintiffs' Fraud, Fraud in the Inducement, and Conspiracy to
        Commit Fraud Claims Are Also Time Barred ........................................ 19

        3.  Plaintiffs' Statutory Securities' Fraud Claims Are Also Time
        Barred............................................................................................ 22

IV.  CONCLUSION.................................................................................................. 23

## TABLE OF AUTHORITIES

**Page**

### CASES

Abi-Najm v. Concord Condo., LLC,
    280 Va. 350 (Va. 2010)..........................................................................................8

All. Tech. Grp., LLC v. Achieve 1, LLC,
    No. 3:12CV701-HEH, 2013 WL 143500 (E.D. Va. Jan. 11, 2013) ........................6

Aozora Bank, Ltd. v. UBS AG,
    144 A.D.3d 436 (N.Y. 2016) ...............................................................................21

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).................................................................................................5

Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC,
    261 F. Supp. 2d 483 (E.D. Va. 2003) ...................................................................16

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007).................................................................................................5

Boykin v. Hermitage Realty,
    234 Va. 26 (Va. 1987).............................................................................................8

Calderon v. Aurora Loan Serv., Inc.,
    No. 1:10CV129 (JCC), 2010 WL 2306343 (E.D. Va. June 3, 2010) ....................14

Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v.
    Wachovia Bank of Delaware Nat. Ass'n,
    No. 10-520, 2011 WL 864421 (D.Del. Mar. 9, 2011) ...........................................14

Colgan Air, Inc. v. Raytheon Aircraft Co.,
    507 F.3d 270 (4th Cir. 2007) ..................................................................................4

ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,
    553 F.3d 187 (2d Cir. 2009)..................................................................................12

Erickson v. Pardus,
    551 U.S. 89 (2007)...................................................................................................5

Firestone v. Wiley,
    485 F. Supp. 2d 694 (E.D. Va. 2007) ...................................................................16

Greenhouse v. MCG Capital Corp.,
    392 F.3d 650 (4th Cir. 2004) ..................................................................................5

Grossman v. Novell, Inc.,
    120 F.3d 1112 (10th Cir. 1997) ............................................................................11

*Halifax Corp. v. Wachovia Bank*,
    268 Va. 641 (Va. 2004)..................................................................................14, 15

*Harrington v. Office of Mississippi Secretary of State*,
    129 So.3d 153 (Ms. 2013)....................................................................................13

*Hicks v. Wynn*,
    119 S.E. 133 (Va. 1923)........................................................................................9

*Hurst v. State Farm Mut. Auto. Ins. Co.*,
    No. 7:05-cv-00776, 2007 WL 951692 (W.D. Va. Mar. 23, 2007) ...................19, 20

*In re Fannie Mae 2008 Securities Litigation*,
    742 F. Supp. 2d 382 (S.D.N.Y. 2010)...............................................................11, 12

*In re Harman Intern. Industries, Inc. Securities Litigation*,
    791 F.3d 90 (D.C. Cir. 2015) ..............................................................................11

*In re Trex Co., Inc. Sec. Lit.*,
    212 F. Supp. 2d 596 (W.D. Va. 2002) .................................................................10

*Informatics Applications Grp., Inc. v. Shkolnikov*,
    836 F. Supp. 2d 400 (E.D. Va. 2011) .................................................................17

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
    432 F. Supp. 2d 571 (E.D. Va. 2006) ...................................................................7

*Jones v. Shooshan*,
    855 F. Supp. 2d 594 (E.D. Va. 2012) .................................................................19

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)...........................................................................11, 12

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ...............................................................................8

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010).............................................................................................22

*MicroStrategy Servs. Corp. v. OpenRisk, LLC*,
    No. 1:14CV1244, 2015 WL 1221263 (E.D. Va. Mar. 17, 2015) .....................14, 19

*Mohebbi v. Khazen*,
    50 F. Supp. 3d 1234 (N.D. Cal. 2014) ................................................................10

*Oliver v. Omega Protein, Inc.*,
    No. 3:10cv47, 2011 WL 1044403 (E.D. Va. Jan. 31, 2011)................................17

*Rossman v. Lazarus*,
No. 1:08-CV-316 (JCC), 2008 WL 4181195 (E.D. Va. Sept. 3, 2008)...................................20

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris*
*Companies, Inc.*,
75 F.3d 801 (2d Cir. 1996)...................................................................................................11

*Shapiro v. Hersch*,
182 A.D.2d 403 (N.Y. 1992) .................................................................................................21

*Smith v. Circuit City Stores, Inc.*,
286 F. Supp. 2d 707 (E.D. Va. 2003) ..................................................................................10

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
250 F.3d 87 (2d Cir. 2001).....................................................................................................12

*Tysons Toyota, Inc. v. Commonwealth Life Ins.*,
20 Va. Cir. 399 (Va. Cir. 1990) ...........................................................................................14

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370 (4th Cir. 2008) .................................................................................................6

*Vitol, S.A. v. Primerose Shipping Co. Ltd.*,
708 F.3d 527 (4th Cir. 2013) ................................................................................................18

*Walsh v. Bank of America, NA*,
No. 1:11-cv-1168, 2012 WL 13020695 (E.D. Va. Feb. 15, 2012) .........................................20

*Witcher v. Reid*,
70 Va. Cir. 415 (Va. Cir. 2006) ............................................................................................15

*Zuberi v. Hirezi*,
No. 1:16-CV-1077, 2017 WL 436278 (E.D. Va. Jan. 30, 2017) .............................................6

STATUTES

15 U.S.C. § 78j(b) .............................................................................................................4, 10

Federal Securities Act Sections 17(a)(2) and (a)(3) .....................................................13

Miss. Code § 75-71-509(j)(2) ...........................................................................................22

Mississippi Code Sections 75–71–501(2) and (3) .........................................................13

Mississippi Code Section 75-71-501 ...............................................................................13

Mississippi Code § 75-71-509 .............................................................................4, 10, 13, 22

Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 (1995) ............................................................................................................. 10

Securities Act of 1933, Pub. L. 73-22, 48 Section 17(a) Stat. 74 (1933) (codified at 15 U.S.C. § 77a *et seq.*) .......................................................................... 13

Va. Code Ann. § 8.01-248 ............................................................................................ 19

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5 ............................................................................................... 4, 10

Fed. R. Civ. P. 8(a)(2) ................................................................................................... 5

Fed. R. Civ. P. 9(b) ...................................................................................................... 10

Defendant Terry R. McAuliffe ("Mr. McAuliffe") respectfully requests that the Court dismiss all claims lodged against him in Plaintiffs' Complaint (ECF No. 1-2) in their entirety. Plaintiffs' Complaint, and particularly the claims pleaded against Mr. McAuliffe—Counts I, II, III, IV, VII, and VIII—is frivolous, riddled with fatal deficiencies, and fails to comply even with the most basic pleading standards, much less the heightened pleading standards required for the bulk of Plaintiffs' claims. Moreover, Plaintiffs' claims against Mr. McAuliffe are time barred, and their allegations fail to disclose that Mr. McAuliffe was not a partner in the company they invested in, and was not even at the affiliated company at the time they invested. Indeed, these fatal deficiencies and selective omissions expose Plaintiffs' Complaint for what it really is—a politically motivated attack designed, not to vindicate any actual injury, but rather to garner publicity and harm Mr. McAuliffe's reputation. As such, because there is no set of facts that Plaintiffs could allege that would entitle them to pursue their claims against him in Court, Mr. McAuliffe respectfully submits that granting leave to amend would be futile and dismissal with prejudice is appropriate. Further, to the extent that the arguments made by Defendants Anthony Rodham, American Immigration Center, LLC, Capital Wealth Holdings Limited, GreenTech Automotive Capital A-3 GP, LLC, GreenTech Automotive, Inc., Gulf Coast Funds Management, LLC, and WM Industries Corp. (collectively, "the Company Defendants"), in their motion to dismiss support this Motion, Mr. McAuliffe joins in those and urges dismissal on those grounds as well.

## I.      INTRODUCTION

Plaintiffs' Complaint purports to bring common law and securities fraud, breach of fiduciary duty, and conspiracy claims against all Defendants—including Mr. McAuliffe—for allegedly false statements made in connection with Plaintiffs' investment in GreenTech Automotive Partnership A-3, LP ("Automotive Partnership"), a partnership which made a loan to

GreenTech Automotive, Inc., an electric car company focused on developing cars traveling less than 25 miles per hour.[1] Out of approximately 280 paragraphs of allegations, there are only nine direct factual allegations against Mr. McAuliffe, and only one sentence in the entire Complaint purports to represent a false statement made by him. In contrast, over 23 allegations pertain to all "Defendants," without any specification as to which Defendant engaged in the purported action. The dearth of statements attributed to Mr. McAuliffe, combined with the over-abundance of group pleading make it impossible to put Mr. McAuliffe or this Court on notice as to the nature of his (or anyone's) supposedly illegal actions under Rule 12(b)(6)'s pleading standards as well as the heightened "time, place, and manner" requirements for common law and securities fraud.

Moreover, the most detailed allegations made against Mr. McAuliffe are simply insufficient to meet even the most basic elements of Plaintiffs' claims as they are either non-material statements of puffery or, on the face of the Complaint, the statements are plainly true and cannot be construed as misrepresentations. Indeed, Plaintiffs essentially allege that Mr. McAuliffe and other Defendants fraudulently induced Plaintiffs to invest in GreenTech by falsely promising them that they could obtain EB-5 visas, but then assert that Mr. McAuliffe is further at fault for *trying to ensure that Plaintiffs received those visas.*[2] Such allegations are not only contradictory, but they plainly do not and cannot constitute any type of fraud, misrepresentation, or conspiracy

---

[1] The Automotive Partnership is not a party to this suit. And, indeed, Plaintiffs fail to disclose that Mr. McAuliffe was not a partner in the Automotive Partnership. Rather, the Complaint is styled as if Plaintiffs had invested directly in GreenTech Automotive, Inc. ("GreenTech"), a wholly separate entity. Notably, the Complaint fails to disclose that Mr. McAuliffe was merely a part-time, non-executive chairman of GreenTech when he was there, and, indeed, was not even at GreenTech at the time Plaintiffs invested in the Automotive Partnership.

[2] Plaintiffs refer to GreenTech in their Complaint, so Mr. McAuliffe does here as well. Nevertheless, as noted, Plaintiffs were not actually investors in GreenTech.

to commit the same. For these reasons, as well as those set out below, Plaintiffs' claims against Mr. McAuliffe—I, II, III, IV, VII, and VIII—should be dismissed in their entirety.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On November 29, 2017, Plaintiffs, a group of Chinese investors in the Automotive Partnership, initiated this action against Mr. McAuliffe, Anthony Rodham, Xiaolin "Charles" Wang, American Immigration Center, LLC, Capital Wealth Holdings Limited, GreenTech Automotive Capital A-3 GP, LLC, GreenTech, Gulf Coast Funds Management, LLC, and WM Industries Corp., and Does 1-100 (collectively, "Defendants"), in the Circuit Court of Fairfax County, Virginia. *See* Complaint ("Compl."), ECF No. 1-2. The Company Defendants removed the action to this Court on December 22, 2017, on the basis of federal question and supplemental jurisdiction. ECF No. 1. Mr. McAuliffe joined in that removal. ECF No. 2. On December 29, this Court granted Defendants' consent request to file responsive pleadings on January 12, 2018. ECF No. 6.

The suit alleges, in pertinent part, that Defendants induced Plaintiffs to invest $500,000 in the Automotive Partnership by "in sum or substance" misrepresenting Plaintiffs' ability to obtain permanent EB-5 visas[3] to remain in the United States if they invested in the company and to "quickly recover their capital investments in full." Compl. ¶ 1. With respect to Mr. McAuliffe, Plaintiffs make the following specific allegations: that he (1) "help[ed] recruit investors and would help push the project through regulatory authorities, including [the United States Custom and Immigration Services ("USCIS")]," *id.* ¶ 76; (2) assisted investor recruitment efforts in China, *id.*

---

[3] EB-5 visa refers to the Employment-Based Immigration Fifth Preference Program, under which immigrant investors and their families can live and work permanently in the United States once they have invested at least $500,000 in a commercial enterprise in a "Targeted Employment Area." Compl. ¶¶ 57-58. A Targeted Employment Area constitutes either a rural area or an area with high unemployment. *Id.* ¶ 58.

¶ 80; (3) participated in roadshows in China, *id.* ¶ 88; (4) "met with the Chinese government in 2010 to discuss GreenTech," which was "highlighted" by "Defendants," *id.* ¶ 89; (5) allowed his name to be used by Defendants Rodham and Wang and in promotional materials, *id.* ¶ 90; (6) made speeches promoting GreenTech and "how it would generate hundreds of jobs, and its ultimate success," *id.*; (7) received $120,000 in annual compensation, *id.* ¶ 157; and (8) attempted to exert pressure on USCIS to get them to grant EB-5 visa applications for GreenTech's Chinese investors, and was ultimately successful in these efforts, *id.* ¶¶ 175-79. Plaintiffs assert that the provision of these EB-5 applications led investors to continue to invest in GreenTech and "induced reliance" that "exacerbated their injury." *Id.* ¶ 179. The Complaint contains no allegations that Mr. McAuliffe met with any specific Plaintiffs, nor does it allege that any specific Plaintiff attended any event where Mr. McAuliffe was present.

Nevertheless, Plaintiffs assert that the supposed actions by Mr. McAuliffe (as well as other actions by all Defendants) constitute, in pertinent part, fraud in the inducement (Count I), fraud (Count II), federal securities fraud under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 (Count III), securities fraud pursuant to Mississippi Code § 75-71-509 (Count IV), aiding and abetting breach of fiduciary duty (Count VII), and conspiracy to commit fraud and breach of fiduciary duties (Count VIII).[4] *See id.* ¶¶ 202-44, 254-66. Plaintiffs ultimately seek damages in excess of $17,920,000. *Id.* ¶ B.

_____

[4] Plaintiffs' Complaint does not indicate explicitly under which states' law it brings its fraud, fraud in the inducement, aiding and abetting breach of fiduciary duty, and conspiracy claims in its Counts' section. Nevertheless, the Complaint's statement of jurisdiction asserts that "the causes of action alleged herein arose from business [Defendants] transacted, in whole or in part, in Virginia." Compl. ¶ 55. Accordingly, it appears Plaintiffs have conceded that their tort actions are brought under Virginia law, or that the "place of the wrong" for the purposes of these torts is Virginia. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) ("Under Virginia law, the rule of lex loci delicti, or the law of the place of the wrong, applies to choice-of-law decisions in tort actions."). This Motion addresses them as such.

### III.    ARGUMENT

**A.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Plaintiffs' claims against Mr. McAuliffe are facially inadequate because they fail to meet the basic pleading requirements in Federal Rules 8, 9, and 12(b)(6). Further, because there is simply no set of facts under which Plaintiffs could meet such standards with respect to Mr. McAuliffe, leave to amend would be futile and dismissal with prejudice is appropriate.

To state a claim, a plaintiff must offer "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "[s]pecific facts are not necessary," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To meet this standard, the complaint must "contain sufficient factual matter" which, if accepted as true is appropriate at the motion to dismiss stage, "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint that merely cites or offers a "recitation of the elements of a cause of action" is not sufficient. *Id.* Allegations that are too vague to give the defendants notice of the claims against them are subject to dismissal. *Twombly*, 550 U.S. at 555. Where there is no plausible set of facts plaintiff could use to prove his claim, dismissal is warranted. *See Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 655 (4th Cir. 2004).

**1.    Plaintiffs Fail to State Claims for Fraud in the Inducement and Fraud**

Plaintiffs' fraud in the inducement (Count I) and fraud (Count II) claims fall short of the Federal Rules' pleading requirements on several fronts. *First*, both are subject to, and fail to meet, the heightened requirement in Federal Rule 9(b) that they be pled "with particularity." Fed. R. Civ.

Proc. 9(b); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). To meet this standard, for both claims the complaint must identify (1) the fraudulent statements which were made and the documents or oral representations containing them, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements, the manner in which they misled the plaintiff, and the manner in which plaintiff relied on the statements. *U.S. ex rel. Wilson*, 525 F.3d at 379; *Zuberi v. Hirezi*, No. 1:16-CV-1077 (AJT/TCB), 2017 WL 436278, at *3 (E.D. Va. Jan. 30, 2017). "When facts are pleaded indiscriminately against a group, rather than against particular defendants, Rule 9(b)'s requirements are not met." *All. Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12CV701-HEH, 2013 WL 143500, at *9-10 (E.D. Va. Jan. 11, 2013). "This is because the 'time, place, and manner' of the false statements cannot be ascertained without identifying the speaker." *Id.*

Here, of the eight allegations lodged against Mr. McAuliffe, *see* discussion *supra* at Section II, only one makes mention of any statement allegedly made by Mr. McAuliffe—that he made speeches promoting GreenTech and "how it would generate hundreds of jobs, and its ultimate success." Compl. ¶ 90. Nevertheless, the Complaint fails to provide any discussion of when this statement was made, where it was made, or the manner in which it misled Plaintiffs. Indeed, the Complaint does not even allege with particularity or otherwise which specific Plaintiffs heard the statement and relied on it—a fact that is readily available to them and necessary to meet the pleading standards.[5] *Kellogg Brown & Root,* 525 F.3d at 379 ("These facts are often "referred to

---

[5] The "who, what, when, where, and how" are particularly important in this context where, as discussed below, Mr. McAuliffe was not even working with GreenTech at the time that the investments were made. Thus, it is quite plausible—and Plaintiffs do not allege to the contrary— that none of the named Plaintiffs ever even heard Mr. McAuliffe speak or were privy to any other

as the 'who, what, when, where, and how' of the alleged fraud.") (citation omitted). Accordingly, for that statement as well as the other allegations against Mr. McAuliffe, which include no specific statements or omissions, much less any of the requisite supporting facts, it is clear that they fail to meet Rule 9(b)'s requirement that time, place, and manner be pleaded.

Moreover, at least three of these specific allegations as well as the bulk of the allegations in the Complaint, reference multiple or all Defendants, not solely Mr. McAuliffe.[6] *See, e.g.*, *id.* ¶ 4 ("*They* misrepresented the number of direct and indirect jobs . . . . ") (emphasis added); *id.* ¶ 88 ("From 2010 through 2013, *Mr. McAuliffe, Mr. Rodham and Charles Wang* participated in multiple roadshows . . . .") (emphasis added); *id.* ¶ 92 ("*Defendants* falsely stated that GreenTech was growing rapidly . . . .") (emphasis added); *see also id.* ¶¶ 80-82, 89, 91, 93-96, 172. Such indiscriminate pleading is insufficient to meet Rule 9(b)'s standard and to put Mr. McAuliffe on notice as to what statements he allegedly made that were false.[7] *See, e.g.*, *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 594 (E.D. Va. 2006) ("group pleading is insufficient to plead with the particularity, as required by Rule 9(b)"). As such,

---

actions alleged in the Complaint. Plaintiffs' conclusory allegation of reliance (which is made as to the actions of all Defendants) does not save this. Compl. ¶¶ 116, 119-20.

[6] While there are more than nine paragraphs in the Complaint that mention Mr. McAuliffe by name, the bulk of these are of the same nature as the group pleading paragraphs discussed herein, generally referencing Mr. McAuliffe in combination with Defendants Rodham and Wang, making it unclear as to who made the alleged misrepresentation or took the purportedly material action. *See, e.g.*, Compl. ¶¶ 1, 3, 4, 80.

[7] Notably, there are instances in the Complaint where Plaintiffs do attribute specific statements to specific speakers. *See, e.g.*, Compl. ¶¶ 107 -110 (alleging that Charles Wang made specific statements in May 2012 and that such statements were false). Thus, it appears that Plaintiffs do know how to plead with more specificity where they think they are able to, which further indicates that they have not done so for Mr. McAuliffe because they cannot plead further facts and, as such, that the allegations against him should be completely dismissed.

Plaintiffs' fraud based allegations against Mr. McAuliffe must be dismissed for their failure to comply with Rule 9(b).

Plaintiffs' fraud in the inducement and fraud claims against Mr. McAuliffe must also be dismissed because they fail to allege that he misrepresented any "present pre-existing facts," but, rather, allege only that he misrepresented "unfulfilled promises or statements as to future events," which are not actionable as fraud. *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 362 (Va. 2010); *see also Boykin v. Hermitage Realty*, 234 Va. 26, 29 (Va. 1987) ("[T]he gist of fraud in such case is not the breach of the agreement to perform, but the fraudulent intent . . . [T]he state of the promisor's mind at the time he makes the promise is a fact, and . . . if he represents his state of mind . . . as being one thing when in fact his purpose is just the contrary, he misrepresents a then existing fact. ") (internal quotation and citation omitted). The crux of Plaintiffs' allegations against Mr. McAuliffe center on two alleged "promises"—(1) that Plaintiffs would receive EB-5 visas and, with them, permanent residence in the United States, *see* Compl. ¶ 1; and (2) that GreenTech "would generate hundreds of jobs," and would ultimately be successful, *see id.* ¶ 90. Both of these plainly look to the future, and there is simply no manner in which they could constitute a "present pre-existing fact" known to Mr. McAuliffe at the time they were made. In particular, not only are the statements about the number of jobs that GreenTech "would generate" and its "ultimate success" future looking on their face, but Plaintiffs have not pleaded any facts showing that at the time these were allegedly made Mr. McAuliffe knew otherwise. And their conclusory statements that "Defendants knew that [the alleged statements] were false," *see* Compl. ¶¶ 204, 215, fall far short of Rule 9(b)'s pleading requirements. *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) (noting that a conclusory

allegation that a defendant's "statements were known by [him] to be false at the time they were made . . . is entirely insufficient" to properly plead fraud) (internal quotations omitted).

Moreover, given that EB-5 visas can only be awarded by a third-party government agency, there is simply no way that Mr. McAuliffe could have known at the time that any alleged statements were made that Plaintiffs would not receive such visas.[8] Further, the Complaint actually demonstrates on its face that Mr. McAuliffe certainly did not *intend* for these visas not to be issued at the time the alleged misrepresentations were made. As set out in the Complaint, Mr. McAuliffe allegedly contacted USCIS to try to ensure that the agency *did* approve EB-5 visa applications for GreenTech's investors and, as alleged, the *applications for the visas were approved*. *See* Compl. ¶¶ 170-177. That circumstances may have changed later does not undercut the fact that, as pleaded, Mr. McAuliffe's actions are inconsistent with the intent to commit fraud (*e.g.*, intent not to perform on a promise).

Lastly, as explained at length in the Company Defendants' motion to dismiss, and incorporated herein, these statements are also not actionable as fraud because it was wholly unreasonable for Plaintiffs to rely on Mr. McAuliffe or any other individual's representations of the law. *See, e.g.*, *Hicks v. Wynn*, 119 S.E. 133, 136-37 (Va. 1923) ("A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely;") (citation omitted). And, importantly, the alleged representations were directly contradicted by the written, Private Placement Memorandum provided to Plaintiffs, further undermining any

---

[8] The Complaint does not specifically allege that Mr. McAuliffe made any explicit representation regarding EB-5 visas. Rather, it alleges generally as to Mr. McAuliffe, Defendant Rodham, and Defendant Wang. *See, e.g.*, Compl. ¶ 1. As such, it also fails under Rule 9(b)'s heightened pleading standards. It is addressed here, however, to demonstrate that even if it had been specifically pleaded, such allegation is wholly insufficient to meet the fraud and fraud in the inducement standards and must be dismissed outright.

basis for Plaintiffs' reasonable reliance upon it. *See* GreenTech Automotive Partnership A-3, LP, Amended and Restated Private Placement Memorandum (March 18, 2012) at 17, 19, 20, 21, 22, 27, A-5, Ex. 1 to the Company Defendants' Motion to Dismiss, ECF No. 17-1. As such, Plaintiffs' fraud allegations cannot withstand scrutiny and must be dismissed.

> **2.      Plaintiffs Fail to State a Claim for Federal Securities Fraud under 15 U.S.C. § 78j(b) and 17 C.F.R § 240.10b-5 and Securities Fraud Pursuant to Mississippi Code § 75-71-509**

Plaintiffs' federal (Count III) and Mississippi securities fraud (Count IV) claims fail for the same reasons as their fraud claims. As a fraud-based claim, Rule 10b-5 claims are subject to Rule 9(b)'s heightened pleading standard. Additionally, they must satisfy the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737 (1995), which "codifies the pleading requirements of Rule 9(b) and imposes even more stringent standards." *In re Trex Co., Inc. Sec. Lit.*, 212 F. Supp. 2d 596, 604-605 (W.D. Va. 2002). Under the PSLRA, Plaintiffs bringing Rule 10b-5 claims must "plead with particularity both falsity and scienter . . . specify[ing] each statement alleged to have been misleading, the reasons why the statement is misleading, and, if an allegation regarding the statement is made on information and belief, . . .  *state with particularity all facts* on which that belief is formed." *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1250 (N.D. Cal. 2014) (internal citations omitted) (emphasis in original); *see also* Fed. R. Civ. P. 9(b). If plaintiffs are unable to satisfy these heightened pleading requirements under Rule 9(b) and the PSLRA, the Rule 10b-5 claim should be dismissed with prejudice. *See Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 722-23 (E.D. Va. 2003) ("The Reform Act does not contemplate amending complaints, it sets a high standard of pleading which if not met results in mandatory dismissal.") (internal quotation marks and citations omitted). As explained above, Plaintiffs failed to meet Rule 9(b)'s particularity requirements with respect to any misrepresentation allegations brought against Mr. McAuliffe.

Accordingly, they certainly cannot meet the heightened standards of the PSLRA and, as such, their claims should be dismissed with prejudice.

Even if they could meet the heightened pleading standards, however, Plaintiffs' securities claims also fail to meet the basic 12(b)(6) pleading requirements. Specifically, to state a claim under Rule 10b-5, plaintiffs must allege that the defendant: "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (quotation and citation omitted). With respect to any alleged misstatements or omissions, courts classify statements "containing simple economic projections, expressions of optimism, and other puffery" as immaterial, and they cannot be the basis used to support a Rule 10b-5 claim. *In re Fannie Mae 2008 Securities Litigation*, 742 F. Supp. 2d 382, 395 (S.D.N.Y. 2010) (quotation and citation omitted).

As noted, the only actual statement that Plaintiffs attribute to Mr. McAuliffe is that GreenTech would "generate hundreds of jobs," and that he vouched for its "ultimate success." Compl. ¶ 90. However, these statements are plainly general expressions of forward-looking, corporate optimism and, as such, are the type of immaterial puffery that cannot sustain a Rule 10b-5 claim. *See In re Harman Intern. Industries, Inc. Securities Litigation*, 791 F.3d 90, 109-110 (D.C. Cir. 2015); *see also Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121 (10th Cir. 1997) (finding that statement that company had achieved "substantial success" constituted puffery); *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 811 (2d Cir. 1996)) (company was "optimistic" and "should deliver income growth consistent with its historically superior performance" was puffery) (internal quotation and citation omitted).

Moreover, Plaintiffs have failed to sufficiently allege scienter or causation. Much like a fraud claim, to allege a Rule 10b-5 claim a plaintiff must allege facts that support a "strong inference of fraudulent intent." *In re Fannie Mae*, 742 F. Supp. 2d at 396; *see also ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("The requisite state of mind in a section 10(b) and Rule 10b-5 action is an intent to deceive, manipulate, or defraud.") (internal citation omitted). As discussed above, if anything, the Complaint actually alleges that Mr. McAuliffe *did not* intend to deceive Plaintiffs or any other investors but, rather, attempted to ensure that they received an EB-5 visa by contacting USCIS. Indeed, the Complaint alleges that Plaintiffs did actually obtain the initial EB-5 visa application approval, exactly what was allegedly promised. *See* Compl. ¶¶ 172, 177. Such an action simply cannot be construed to constitute scienter.[9]

Likewise, to satisfy the causation requirement for a Rule 10b-5 claim, a plaintiff must prove both that the alleged misrepresentation caused him to enter into the transaction (i.e. transaction causation) and that the same misrepresentation caused the actual loss suffered (loss causation). *See Lentell*, 396 F.3d at 172. While transaction causation is essentially a "but for" test as to whether the plaintiff would have entered into the transaction, loss causation requires proof that the misstatement caused the damage to occur. *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001) ("In sum, to escape dismissal of a securities fraud complaint, the plaintiff must demonstrate that the fraud caused the plaintiff to engage in the transaction and that it also caused the harm actually suffered."). Given that Plaintiffs have failed to sufficiently

---

[9] Further, given that the EB-5 applications were granted by third-party agencies pursuant to those agencies' application of the law, even if such promises were made, which Mr. McAuliffe denies, Plaintiffs reliance on them would be wholly unreasonable and insufficient to allege a Rule 10b-5 violation for the same reasons stated *supra* at Section III, A, 1, as well as in the Company Defendants' motion to dismiss.

allege that Mr. McAuliffe made any specific false statements, it follows that they have also failed to allege that any specific false statement by Mr. McAuliffe actually caused them to enter into the transactions in question in the Complaint. Indeed, if anything, as pleaded, the Complaint indicates that the cause of Plaintiffs' entrance into the transaction was their reliance on "some or all of the statements in . . . newsletters, statements on Defendants' websites and social media, and statements made at certain events." Compl. ¶¶ 119-20. Nevertheless, the Complaint contains no allegations that Mr. McAuliffe took part in writing statements in any of the alleged newspapers, websites, or social media. Nor does the Complaint point to any event in which Mr. McAuliffe spoke that led to Plaintiffs' investment in GreenTech. Accordingly, Plaintiffs' Rule 10b-5 claim fails on these grounds as well.

Similarly, the Mississippi Securities Fraud Act is interpreted in line with federal law. *See Harrington v. Office of Mississippi Secretary of State*, 129 So.3d 153, 159 (Ms. 2013) ("There exists a dearth of case law on Mississippi securities law, however, Mississippi's regulations are similar to the federal securities regulations, and we are able to look to federal case law for guidance."). Accordingly, here—assuming that Plaintiffs are referring to the section of the Mississippi Code that corresponds with Rule 10b-5—the same standards applied to the federal securities act should be applied to the Mississippi securities act and it should be dismissed for the same reasons.[10]

---

[10] Rule 10b-5 and Section 17(a) of the Securities Act of 1933, Pub. L. 73-22, 48 Stat. 74 (1933) (codified at 15 U.S.C. § 77a *et seq*.), employ almost identical language as Section 75-71-501 of the Mississippi Code, which in turn is almost identical to the provision at issue here, i.e. Section 75-71-509. *Harrington*, 129 So.3d at 160. As such, the Section at issue here should be interpreted accordingly, with the sole exception being that a scienter requirement may not apply. *Id*. at 159 ("Sections 17(a)(2) and (a)(3) of the federal Securities Act are identical to Mississippi Code Sections 75–71–501(2) and (3). Those subsections are devoid of any suggestion of a scienter requirement[.]") (internal quotation and citation omitted). In the instant case, this is of no

3. **Plaintiffs Fail to State a Claim for Aiding and Abetting Breach of Fiduciary Duty**

Plaintiffs also fail to state a claim for aiding and abetting breach of fiduciary duty.[11] As an initial matter, as Courts in this district have recognized, Virginia law does not recognize a separate tort for aiding and abetting breach of fiduciary duty. *See, e.g.*, *Calderon v. Aurora Loan Serv., Inc.*, No. 1:10CV129 (JCC), 2010 WL 2306343, at *6 (E.D. Va. June 3, 2010) (finding that Virginia law does not expressly create a separate claim for aiding and abetting a breach of fiduciary duty and dismissing the claim outright); *MicroStrategy Servs. Corp. v. OpenRisk, LLC*, No. 1:14CV1244 (JCC/IDD), 2015 WL 1221263, at *3 (E.D. Va. Mar. 17, 2015) ("This Court declined to create such a cause of action and dismissed a claim identical to the one here for aiding and abetting a breach of fiduciary duty."); *see also Tysons Toyota, Inc. v. Commonwealth Life Ins.*, 20 Va. Cir. 399, at *1 (Va. Cir. 1990) ("there is no authority which would support an independent action for aiding and abetting."). As such, Plaintiffs' claim should be dismissed outright on these grounds.

Notwithstanding, even if this Court were to find that such a claim did exist, Plaintiffs' aiding and abetting claim fails for multiple reasons. In *Halifax Corp. v. Wachovia Bank*, 268 Va.

---

consequence as Plaintiffs have plainly failed to allege any material misstatements, causation, or reliance as discussed herein.

[11] As noted above, because Plaintiffs concede that the actions alleged in their Complaint took place in Virginia, and because Mr. McAuliffe is not a signatory to the Automotive Partnership Amended and Restated Limited Partnership Agreement, Plaintiffs address this claim under Virginia law. To the extent that the Court finds that, as set out in the Company Defendants' motion to dismiss, Delaware law applies to the underlying breach of fiduciary duty claim and the aiding and abetting claim, Mr. McAuliffe adopts their arguments for dismissal herein. In particular, Delaware law, like Virginia law (to the extent such a claim is recognized in Virginia, which Mr. McAuliffe disputes), requires actual knowledge of the breach of fiduciary duty. *See e.g., Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Delaware Nat. Ass'n*, No. 10-520 (JBS/KMW), 2011 WL 864421, at *4 (D.Del. Mar. 9, 2011). As explained herein, no such knowledge has been pleaded with respect to Mr. McAuliffe.

641, 663-64 (Va. 2004), the Virginia Supreme Court—without recognizing a separate claim for aiding and abetting—assumed that if such an action were viable, it would require the plaintiff to establish that the defendant: (1) had knowledge of a third-party's breach of fiduciary duty, and (2) knowingly participated in the breach. *See id.* ("[U]nless [a party] actually knows a breach of fiduciary duty is occurring and participates with *mens rea* in the consummation of the breach, it should not be held liable for aiding and abetting the breach."). Knowing participation requires the plaintiff to assert that the defendant either "recruited, enticed, encouraged, or benefitted from" the third-party's breach of his fiduciary relationship. *Id.* at 661.

None of the actions attributed to Mr. McAuliffe in the Complaint allege, even under Rule 8's liberal pleading standards, that Mr. McAuliffe actually knew that the other Defendants were breaching a fiduciary duty to Plaintiffs. *Second*, there is nothing in the Complaint that indicates Mr. McAuliffe "recruited, enticed, encouraged, [or otherwise] benefitted from" any breach of fiduciary duty. *See id.* at 413. Indeed, there is not one allegation in the Complaint that Mr. McAuliffe recruited the other Defendants to engage in any of the actions cited therein, or that he enticed or encouraged them to make any of statements they are alleged to have made. As such, Plaintiffs have failed to plead the elements of a proper aiding and abetting breach of fiduciary duty cause of action (assuming there is one), and their claim should be dismissed.

### 4.    Plaintiffs Fail to State a Claim for Conspiracy to Breach Fiduciary Duty or Commit Fraud

Because Plaintiffs have failed to allege the underlying facts necessary to establish a claim for fraud or aiding and abetting a breach of fiduciary duty, they also fail to state a claim for conspiracy (Count VIII). To properly establish a claim for civil conspiracy, a plaintiff must satisfy three conditions: (1) the elements of the underlying tort (*e.g.* fraud, breach of fiduciary duty); (2) an agreement among persons to commit the tort; and (3) damages. *See Witcher v. Reid*, 70 Va. Cir.

415, at *3 (Va. Cir. 2006). Accordingly, a civil conspiracy claim cannot survive without proof of underlying tort as well as allegations evidencing a "preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (quotation and citation omitted). "[T]o survive a motion to dismiss, Plaintiff must at least plead the requisite concert of action and unity of purpose in more than 'mere conclusory language.'" *Id.* (citing *Lewis v. Gupta*, 54 F. Supp. 2d 611, 618 (E.D. Va. 1999); *Firestone v. Wiley*, 485 F. Supp. 2d 694, 704 (E.D. Va. 2007) ("In other words, Virginia requires a plaintiff to allege some details of time and place and the alleged effect of the conspiracy. Where, as here, there are only vague, conclusory allegations of the conspiracy, the claim fails at the threshold.") (internal quotation marks and citation omitted).

Plaintiffs have failed to adequately allege that Mr. McAuliffe committed fraud or aided and abetted a breach of fiduciary duty. Moreover, there is no allegation in the Complaint—nor could there be given that Mr. McAuliffe was not even part of the companies at the time that the majority of Plaintiffs invested in them—that Mr. McAuliffe owed any fiduciary duty to Plaintiffs. As such, Plaintiffs have failed to plead the first element for their conspiracy claim and, as such, it should be dismissed. Notwithstanding the underlying claims, Defendants have also failed to allege that any "agreement" to commit these torts took place between Mr. McAuliffe and the other Defendants. Indeed, contrary to what is required under Virginia law, *Firestone*, 485 F. Supp. 2d at 704, there are no details indicating when or where Mr. McAuliffe agreed to commit the alleged tortuous acts with Defendants. Accordingly, the conspiracy claim must be dismissed on these grounds as well.

### 5.     Plaintiffs Cannot Pierce the Corporate Veil

In addition to failing to state any cause of action directly against Mr. McAuliffe, Plaintiffs also fail to adequately allege that the corporate veil of either Automotive Partnership, GreenTech,

or WM Industries Corp. should be pierced and that the entities' alleged actions should be imputable to Mr. McAuliffe.[12] Under Virginia law, "the standards for veil piercing are very stringent, and piercing is an *extraordinary measure* that is permitted only in the most egregious circumstances." *Oliver v. Omega Protein, Inc.,* No. 3:10cv47, 2011 WL 1044403, at *5 (E.D. Va. Jan. 31, 2011) (emphasis in original) (internal quotation marks omitted). "A court can pierce the corporate veil only upon a showing that (1) the corporation was the *alter ego,* alias, stooge, or dummy of the other entity; and (2) the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 426-27 (E.D. Va. 2011) (quotations and citation omitted). The burden of proof rests upon the party seeking to pierce the corporate veil and, at the pleading stage, a plaintiff must plead sufficient facts—not merely legal conclusions—to show that each element is met. *Id.*

Here, Plaintiffs have failed to plead any facts demonstrating either element of the test with respect to Mr. McAuliffe. Rather, the Complaint merely sets out a list of elements that could constitute the existence of an alter ego or basis for piercing the corporate veil, e.g., abuse of corporate form, failure to maintain corporate formalities, etc., and states that Defendants engaged in them "[u]pon information and belief." Compl. ¶¶ 22, 197-201. And it fails to set forth any accompanying facts supporting them such that they cross the line from possible to plausible.[13]

---

[12] The Automotive Partnership is not a party to this action and Plaintiffs have made no allegations which explain Mr. McAuliffe's relationship to the Automotive Partnership. Mr. McAuliffe addresses these allegations under Virginia law because that is where Plaintiffs have conceded that the harm occurred and because the primary entity that Mr. McAuliffe is alleged to have a relationship to is WM Industries Corp., a Virginia company. To the extent that the Court finds that Delaware law applies, Mr. McAuliffe adopts and incorporates the arguments made in the Company Defendants' motion to dismiss.

[13] Indeed, the only fact it does allege with respect to Mr. McAuliffe that could even theoretically begin to support this claim is that Mr. McAuliffe was "ultimately in control of all entities." *See* Compl. ¶ 22. However, this is directly contrary to the only fact that the Complaint alleges with respect to ownership, specifically, that Mr. McAuliffe has a 25% ownership interest in GreenTech.

*Vitol, S.A. v. Primerose Shipping Co. Ltd.,* 708 F.3d 527, 548 (4th Cir. 2013) (These sweeping allegations do not contain the "'factual enhancement' necessary to cross 'the line between *possibility* and *plausibility* of entitlement to relief.'") (quoting *Twombly,* 550 U.S. at 557). Further, as discussed above, the Complaint has also failed to allege that Mr. McAuliffe engaged in fraud, nor does it contain factual allegations supporting self-dealing. Thus, Mr. McAuliffe should not be maintained as a defendant on the basis that the veil may be pierced, and all claims against him should be dismissed.

## B.   PLAINTIFFS' CLAIMS AGAINST MR. MCAULIFFE ARE TIME BARRED

As set out above, Plaintiff alleges that Mr. McAuliffe has engaged in common law fraud, fraud in the inducement, aiding and abetting breach of fiduciary duty, and conspiracy to commit fraud and breach of fiduciary duty. Under Virginia law and on the face of Plaintiffs' Complaint, all of these claims are time barred and must be dismissed. Further, Plaintiffs' statutory securities fraud claims are also time barred and, as such, must be dismissed.

### 1.   Plaintiffs' Aiding and Abetting and Conspiracy to Commit a Breach of Fiduciary Duty Claims Are Time Barred

Plaintiffs' aiding and abetting and conspiracy to commit a breach of fiduciary duty claims were brought two years after the statute of limitations lapsed and are time barred. The Complaint asserts that all Plaintiffs signed a subscription agreement with the Automotive Partnership between June 15, 2012 and December 14, 2013. Compl. ¶¶ 121-52. And that they entered into these agreements as a result of and in reliance on statements, documents, and alleged misrepresentations that took place prior to that time, i.e., prior to at least December 14, 2013 and in most cases even earlier. *See* Compl. ¶¶ 119-20. Plaintiffs also allege that these same statements, documents, and

---

*See* Compl. ¶ 72. This is plainly not a controlling share of the company, nor a sufficient share to demonstrate ownership, control, or to warrant veil piercing.

alleged misrepresentations constituted a breach of Defendants' fiduciary duties. *Id.* ¶ 247 (explaining that Defendants breached their fiduciary duties first through their alleged fraud and deception). Thus, as alleged, the breach took place on or prior to December 14, 2013.

Under Virginia law, the statute of limitations for a breach of fiduciary duty claim is two years, beginning from the date of the breach. *Jones v. Shooshan*, 855 F. Supp. 2d 594, 602-03 (E.D. Va. 2012). Plaintiffs brought this action on November 29, 2017, nearly four years after the alleged breach took place (and in most cases likely more) and at least two years after December 14, 2015, the last possible date that the statute of limitations lapsed. Accordingly, Plaintiffs' breach of fiduciary duty claim is at least two years too late and is time barred. Because their aiding and abetting breach of fiduciary duty claim and conspiracy to breach a fiduciary duty claims, are premised directly upon that breach and share the same statute of limitations, they are also time barred.[14] *Hurst v. State Farm Mut. Auto. Ins. Co.*, No. 7:05-cv-00776, 2007 WL 951692, at *5 (W.D. Va. Mar. 23, 2007) ("[the statute of] limitations period for a civil conspiracy is based on the statute of limitations for the underlying act"). Therefore, these claims against Mr. McAuliffe must be dismissed.

### 2. Plaintiffs' Fraud, Fraud in the Inducement, and Conspiracy to Commit Fraud Claims Are Also Time Barred

Plaintiffs—as investors exercising reasonable diligence—have been on notice since at least March 24, 2015 of the claims alleged herein and, as a result, the statute of limitations for their

---

[14] As discussed *infra*, Virginia law does not recognize an aiding and abetting breach of fiduciary duty claim, which, in addition to providing an independent basis for dismissal, means that there is a dearth of case law discussing any applicable statute of limitations for aiding and abetting breach of fiduciary duty. Nevertheless, given that the claim is specifically premised upon a breach of fiduciary duty, much like a conspiracy claim, the statute of limitations for the underlying tort should apply. *MicroStrategy*, 2015 WL 1221263, at *3 (finding a two year statute of limitations for aiding and abetting a breach of fiduciary duty); *see also* Va. Code Ann. § 8.01-248 (providing a catch all provision which applies a two year statute of limitations for claims where a limitations period is not specified).

fraud based claims have lapsed. The statute of limitations for Plaintiffs' fraud, fraud in the inducement, and conspiracy claims are two years from the time that the actual fraud or breach was discovered or should have been discovered by the exercise of reasonable diligence. *Walsh v. Bank of America, NA*, No. 1:11-cv-1168 (AJT/JFA), 2012 WL 13020695, at *1 (E.D. Va. Feb. 15, 2012) (discussing statute of limitations for fraud in the inducement); *Rossman v. Lazarus*, No. 1:08-CV-316 (JCC), 2008 WL 4181195, at *4 (E.D. Va. Sept. 3, 2008) (discussing statute of limitations for fraud); *Hurst*, 2007 WL 951692, at *5. As noted *supra*, the alleged fraud occurred nearly four years before the instant case was filed. Although Plaintiffs allege that they did not discover the alleged fraud until 2016, *see* Compl. ¶ 188, the allegations on the face of the Complaint indicate that the alleged fraud should have been discovered well before 2016 and, as such, Plaintiffs' claims are time barred.

As an initial matter, as set out in the Company Defendants' motion to dismiss and adopted herein, given that Plaintiffs were provided with a Private Placement Memorandum with disclosures that should have alerted them that the alleged statements that they purportedly relied upon were false, their claims accrued, at the latest on December 12, 2013, meaning that the statute of limitations lapsed on December 12, 2015, and that Plaintiffs' fraud based claims—brought nearly two years after that—are time barred. *See* Company Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 17, 12-13.

Alternatively, the Complaint alleges that, as early as March 24, 2015, a public report was made to the USCIS Inspector General regarding alleged attempts by Mr. McAuliffe and Defendant Rodham to obtain EB-5 visas for GreenTech investors—the very same actions that Plaintiffs assert constituted a misrepresentation and induced them to invest in GreenTech. *See* Compl. ¶¶ 173, 179. Allegedly, this report outlines improper conduct by Mr. McAuliffe as well as the supposedly dire

financial prospects of GreenTech. *Id.* Given that these same allegations form part of the basis of Plaintiffs' fraud claims, knowledge of this report would have been more than sufficient to alert Plaintiffs to the alleged fraud. *See* Compl. ¶¶ 170-79. Although Plaintiffs assert that they did not discover the report until recently, *see id.* ¶ 173 n.1, that assertion is not only implausible, but given that the report was widely distributed among prominent news outlets such as *The Washington Post*, *The New York Times*, and *CNN* as early as March 24, 2015,[15] it, as well as the information contained in it, should have been discovered by Plaintiffs if they had exercised reasonable diligence well before this Complaint was brought. *Aozora Bank, Ltd. v. UBS AG*, 144 A.D.3d 436, 437 (N.Y. 2016) (finding that news articles were sufficient to put plaintiff on inquiry notice); *Shapiro v. Hersch*, 182 A.D.2d 403 (N.Y. 1992) (dismissing claim as time barred where alleged fraud was "well publicized" and with due diligence could have been discovered). Thus, even if the Court were to find that the Private Placement Memorandum was not sufficient to put Plaintiffs on notice, the statute of limitations for the fraud based actions that Plaintiffs allege herein would have run at least as of March 24, 2017, and, as a consequence, Plaintiffs' fraud claims against Mr. McAuliffe are time barred.[16]

---

[15] The Court can take judicial notice that the USCIS report and its alleged findings were widely reported in news outlets. *See, e.g.*, Tom Hamburger and Rachel Weiner, "Report: Va. governor received special treatment from Homeland Security," *The Washington Post* (Mar. 24, 2015), https://www.washingtonpost.com/politics/report-mcauliffe-asked-for-and-got-favors-at-homeland-security/2015/03/24/00f62514-d24e-11e4-a62f-ee745911a4ff_story.html?utm_term=.19d3abd66db7; Evan Perez, "DHS official helped Clinton brother, Terry McAuliffe," *CNN* (Mar. 24, 2015), http://www.cnn.com/2015/03/24/politics/dhs-official-helped-clinton-brother-terry-mcauliffe/index.html; Julia Preston and Michael Schmidt, "Inquiry Finds Homeland Security Official Intervened in Visa Cases," *The New York Times* (Mar. 24, 2015), https://www.nytimes.com/2015/03/25/us/inquiry-finds-homeland-security-official-acted-improperly-in-visa-cases.html.

[16] Notably the Securities and Exchange Commission Investigation that Plaintiffs refer to in paragraph 8 was also publicized in news outlets as early as August 2, 2013. *See, e.g.*, Tom Hamburger and Ben Pershing, "Car company with ties to Terry McAuliffe probed by SEC," *The Washington Post* (Aug. 2, 2013), https://www.washingtonpost.com/politics/company-with-ties-

### 3.    Plaintiffs' Statutory Securities' Fraud Claims Are Also Time Barred

An action brought under Rule 10b-5 of the Securities Exchange Act and Mississippi Code § 75-71-509 must be instituted within the earlier of: (1) two years after discovery of the facts constituting the violation; or, (2) five years after the violation. *See Merck & Co. v. Reynolds*, 559 U.S. 633 (2010); Miss. Code § 75-71-509(j)(2). For the purposes of the former instance, the limitations period begins to accrue when plaintiffs have discovered, or with reasonable diligence, could have discovered the facts constituting the fraud, whichever comes first. *See Merck & Co.*, 559 U.S. at 653. As discussed *supra*, the claims asserted against Mr. McAuliffe could, with reasonable diligence, have been discovered as early as March 24, 2015. Accordingly, the statute of limitations on Plaintiffs' securities fraud claims lapsed on March 24, 2017, well before the instant suit was filed. As such, Plaintiffs' securities fraud claims are time barred and should be dismissed.

---

to-terry-mcauliffe-is-under-sec-investigation/2013/08/02/da483b36-f956-11e2-b018-5b8251f0c56e_story.html?utm_term=.afc427cdb69d; Katie Glueck, "Report: SEC probing GreenTech," *Politico* (Aug. 2, 2013), https://www.politico.com/story/2013/08/sec-greentech-investigation-terry-mcauliffe-095139.

It is simply implausible that a reasonable investor exercising his or her due diligence would not be expected to monitor, even in a cursory fashion, news reports about a company in which they have invested. And, moreover, it is also implausible that they would not be put on alert to alleged fraud where such reports were covered in the news over at least a three year span before the filing of their Complaint. Accordingly, even if the Court were to find that the Private Placement Memorandum or USCIS report were not sufficient to put Plaintiffs on notice, it could still find that the statute of limitations on these claims lapsed as early as August 2, 2015, due to the widespread publication of the Securities and Exchange Commission Investigation and, as a consequence, Plaintiffs' claims are brought over three years too late.

## IV.    CONCLUSION

For the foregoing reasons, the claims asserted against Mr. McAuliffe in Plaintiffs' Complaint should be dismissed in their entirety. Plaintiffs' failures in pleading against Mr. McAuliffe are not curable by amendment.

DATED this 12th day of January, 2018.

Respectfully submitted,

*Amanda R. Callais*

Marc Erik Elias (*pro hac vice*)
Bruce V. Spiva (*pro hac vice*)
Amanda R. Callais (VSB No. 85891)
Perkins Coie, LLP
700 13th St. N.W., Suite 600
Washington, D.C.  20005-3960
Phone:  (202) 434-1627
Fax:  (202) 654-9106
Email: MElias@perkinscoie.com
Email: BSpiva@perkinscoie.com
Email: ACallais@perkinscoie.com

*Attorneys for Defendant Terry R. McAuliffe*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true copy of the foregoing was served via the Court's CM/ECF system on this 12th day of January, 2018 upon all CM/ECF participants in this case, including counsel for the Plaintiffs and the Company Defendants.

      I also certify that a true copy of the foregoing was served via U.S. Mail on upon:

Mr. Xiaolin "Charles" Wang
11301 Kellie Jean Court
Great Falls, Virginia 22066

Capital Wealth Holdings, Ltd.
c/o Newhaven Trustees (BVI) Limited
Third Floor, J&C Building
PO Box 933
Road Town, Tortola, British Virgin Islands, VG 1110

*Amanda R. Callais*
Amanda R. Callais