**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| XIA BI, *et al.*, | |
| Plaintiffs, | |
| v. | CASE NO. 1:17-cv-01459 |
| TERRY MCAULIFFE, *et al.*, | |
| Defendants. | |

## DEFENDANT TERRY MCAULIFFE'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS COUNTS I, II, III, IV, VII, AND VIII OF PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

**I. ARGUMENT** .................................................................................................................. **2**

    A.    Plaintiffs' Fraud Based Claims Fail to Meet the Heightened Pleading Requirements of Rule 9(b) and the PSLRA (Counts I – IV) ................................. 2

    B.    Plaintiffs Fail to State Claims for Fraud and Fraud in the Inducement Under Rule 12(b)(6) (Counts I & II) ....................................................................................... 7

    C.    Plaintiffs Fail to State Federal Securities Fraud and Mississippi Securities Fraud Claims (Counts III & IV) .................................................................................... 10

    D.    Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claim Fails (Count VII) ....................................................................................................................... 12

    E.    Plaintiffs Fail to State Claims for Conspiracy (Count VIII) ................................. 14

    F.    Plaintiffs Have Not Alleged Sufficient Facts to Pierce the Corporate Veil .......... 14

    G.    Plaintiffs' Claims Are Time Barred .................................................................... 16

**II. CONCLUSION** ........................................................................................................... **18**

**CASES**                                                                                          **TAB**

*Abi-Najm v. Concord Condo., LLC*,
   699 S.E.2d 483 (Va. 2010)........................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................17

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir.), *cert. denied sub nom. Beck v. Shulkin*, 137 S. Ct. 2307
   (2017)..................................................................................................................17

*Boykin v. Hermitage Realty*,
   360 S.E.2d 177 (Va. 1987).....................................................................................7

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
   507 F.3d 270 (4th Cir. 2007) ...............................................................................13

*Cosmas v. Hassett*,
   886 F.2d 8 (2nd Cir. 1989)......................................................................................9

*Crall v. Commonwealth*,
   49 S.E. 638 (Va. 1905).........................................................................................15

*David F. Apple, MD Prof'l Corp. Pension Plan v. Prudential-Bache Sec., Inc.*,
   820 F. Supp. 984 (W.D.N.C. 1992), *aff'd sub nom. Juntti v. Prudential-Bache
   Sec., Inc.*, 993 F.2d 228 (4th Cir. 1993)................................................................4

*Dunn v. Borta*,
   369 F.3d 421 (4th Cir. 2004) .................................................................................5

*Griffin v. Heinitsh*,
   309 F. Supp. 1028 (4th Cir. 1970) .......................................................................15

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) ...........................................................................11

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) .................................................................................2

*In re Cable & Wireless, PLC*,
   321 F.Supp.2d 749 (E.D.Va. 2004) .......................................................................4

*In re Harman Intern. Indus., Inc. Sec. Litig.*,
   791 F.3d 90 (D.C. Cir. 2015)...............................................................................11

*In re Royal Ahold NV Sec. and ERISA Litig.*,
   378 F. Supp. 2d. 334 (4th Cir. 2005) ...................................................................15

CASE                                                                                      TAB

*In re Rural Metro Corp.*,
    88 A.3d 54 (Del. Ch. 2014)......................................................................13, 14

*In re Trex Co., Inc. Sec. Litig.*,
    212 F. Supp. 2d 596 (W.D. Va. 2002) ...................................................................2

*Jones v. Shooshan*,
    855 F. Supp. 2d 594 (E.D. Va. 2012) ..................................................................18

*Juntti v. Prudential-Bache Sec., Inc.*,
    993 F.2d 228 (4th Cir. 1993) ................................................................................4

*Katz v. Holland & Knight LLP*,
    No. 1:08CV1137, 2009 WL 367204 (E.D. Va. Feb. 12, 2009) .............................18

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir. 2005)................................................................................12

*Long v. Teradata Corp.*,
    No. 1:12CV787 2012 WL 3947811, at *8 (E.D. Va. Sept. 10, 2012) ...................17

*Mansfield v. Anesthesia Assocs., Ltd.*,
    No. 1:07CV941 JCC, 2008 WL 1924029 (E.D. Va. Apr. 28, 2008) ......................17

*Merenstein v. St. Paul Fire & Marine Ins. Co.*,
    142 F. App'x 136 (4th Cir. 2005) .........................................................................9

*Nahigian v. Juno Loudoun, LLC*,
    684 F. Supp. 2d 731 (E.D. Va. 2010) ...................................................................6

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*,
    75 F.3d 801 (2d Cir. 1996)..................................................................................11

*Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001)..................................................................................12

*Teachers' Retirement Sys. of La. v. Hunter*,
    477 F.3d 162 (4th Cir. 2007) ..............................................................................11

*Tsimpedes v. Martin*,
    No. 1:06cv47(JCC), 2006 WL 2222393 (E.D. Va. Aug. 2, 2006) ........................15

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ................................................................................2

# TABLE OF AUTHORITIES

**OTHER AUTHORITIES**                                                           **TAB**

Fed. R. Civ. P. Rule 9(b)...........................................................................................passim

Rule 12(b)(6)............................................................................................................7

Securities Act of 1933, Pub. L. 73-22, 48 Section 17(a) Stat. 74 (1933) (codified
    at 15 U.S.C. § 77a et seq.) §10b-5 ................................................................11, 12

Defendant Terry McAuliffe ("Mr. McAuliffe")'s motion to dismiss, ECF No. 18, and supporting memorandum, ECF. No. 19, establish that Counts I, II, III, IV, VII, and VIII of Plaintiffs' Complaint are woefully inadequate—failing to state any claims against Mr. McAuliffe under Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Moreover, these claims are time barred. Plaintiffs' opposition does nothing to call the validity of these arguments into question and, in fact, only underscores the dearth of specific and particular allegations Plaintiffs have made with respect to Mr. McAuliffe, demonstrating again that this case is nothing more than a fishing expedition aimed at garnering publicity and harming Mr. McAuliffe's reputation. Indeed, despite including over 116 citations to the Complaint, Plaintiffs' fifty-page opposition references Complaint citations pertaining solely to Mr. McAuliffe only 33 times. Rather, as they did in their Complaint, Plaintiffs continue to rely on impermissible group pleading, attempting to implicate Mr. McAuliffe in this action as "guilty by association," while blatantly ignoring the fact that Mr. McAuliffe was not even associated with the companies in question during the bulk of the years at issue in the Complaint. Such general pleading falls well short of the standards required by the rules, which require that Plaintiffs point to direct, tortious action taken by Mr. McAuliffe to plead their claims, which they cannot do. As such, Mr. McAuliffe respectfully requests that this Court grant his motion and dismiss Plaintiffs claims against him in Counts I, II, III, IV, VII, and VIII of their Complaint.[1]

---

[1] On February 26, 2018, American Immigration Center, LLC ("AIC"), GreenTech Automotive Capital A-3 GP, LLC (the "General Partner"), GreenTech Automotive, Inc. ("GreenTech"), Gulf Coast Funds Management, LLC ("Gulf Coast"), and WM Industries Corporation ("WM") (collectively, the "Debtors") filed voluntary petitions seeking relief under Chapter 11 of Title 11 of the United States Bankruptcy Code. As a result, the entirety of this proceeding should be stayed pursuant to section 362(a) of the Bankruptcy Code because the claims asserted against the non-debtor defendants herein are interrelated with the claims asserted against the Debtors.  In an abundance of caution, this reply is being submitted on behalf of Mr. McAuliffe who has not filed

# I.    ARGUMENT

## A.    Plaintiffs' Fraud Based Claims Fail to Meet the Heightened Pleading Requirements of Rule 9(b) and the PSLRA (Counts I – IV)

Contrary to Plaintiffs' assertions, Rule 9(b) and the PSLRA are not "technical defenses," lodged by Mr. McAuliffe against their Complaint. *See* Pls.' Consolidated Opp. to Defs.' Mots. to Dismiss ("Pls.' Opp."), ECF No. 49, 2.  Rather, these are threshold pleading requirements that Plaintiffs must meet to proceed with their suit, and they must do so for good reason. As the Fourth Circuit has explained, heightened pleading requirements like Rule 9(b) "ensure[] that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of[;] protect defendants from frivolous suits[;] eliminate fraud actions in which all the facts are learned after discovery[; and] protect[] defendants from harm to their goodwill and reputation." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). The scarcity of allegations against Mr. McAuliffe in Plaintiffs' Complaint—and Plaintiffs' inability to point to any specific statements relating to Mr. McAuliffe in their Opposition—make it impossible for him to formulate a defense and require dismissal of their claims against him.

As an initial matter, Plaintiffs argue—incorrectly—that because there are *some* "specific allegations" in the Complaint, the Court should find that the Complaint as a whole meets the heightened pleading requirements because, taken as one, it is sufficient to put Mr. McAuliffe on notice as to the claims against him. Pls.' Opp. 24. Not only is this out of line with the purpose of Rule 9(b) as well as the PSLRA, but it is clearly contrary to the plain standards of the rules, which require that time, place, and content of the fraudulent representations be pleaded. *See, e.g.*, *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008); *In re Trex Co., Inc.*

---

for bankruptcy. Mr. McAuliffe reserves all rights with respect to the effect of the bankruptcy petitions on the claims asserted against him herein.

*Sec. Litig.*, 212 F. Supp. 2d 596, 604-605 (W.D. Va. 2002) (explaining that the PSLRA codifies Rule9(b)'s requirements and imposes even more stringent standards). Plaintiffs' own argument underscores this point.

Specifically, Plaintiffs point the Court to ten paragraphs of their Complaint, which they contend set out allegations sufficient to meet heightened pleading requirements—paragraphs 104, 106 – 114. *See* Pls.' Opp. 21-22. Notably, *none* of these paragraphs includes *any* reference to Mr. McAuliffe.[2] Rather, they set out allegations against either Gulf Coast Funds Management, LLC ("Gulf Coast") or Charles Wang. *See* Compl. ¶¶ 104, 106, 111, 112 (allegations against Gulf Coast); *id.* ¶¶ 107-109, 114 (allegations against Charles Wang). Moreover, on their face these allegations stand in sharp contrast to the generalized allegations pleaded with respect to Mr. McAuliffe. *Compare* Compl. ¶ 104 ("In a presentation first given December 2011, Gulf Coast stated that investors are investing in 'a company that is already producing and selling new energy vehicles with high profit margins.'"), *with* Compl. ¶ 76 (McAuliffe "help[ed] recruit investors and would help push the project through regulatory authorities, including [the United States Custom and Immigration Services ("USCIS")]," and assisted investor recruitment efforts in China); *compare* Compl. ¶ 107 ("On or about late May 2012, at a meeting in Nanjing, China, Charles Wang represented that GreenTech's patented technology was extremely advanced."), *with* Compl. ¶ 88 (stating that Mr. McAuliffe, Anthony Rodham, and Charles Wang participated in roadshows in China). Accordingly, even Plaintiffs' assessment of particularity, *e.g.*, Compl. ¶¶ 104, 106-114, demonstrates that the allegations made against Mr. McAuliffe, which fail to set out date, time, place or even specific misrepresentations, cannot withstand scrutiny. And where Plaintiffs cannot

---

[2] Indeed, these paragraphs do not even reference the companies—WM Industries Corp. and GreenTech Automotive, Inc. ("GreenTech")—with which Plaintiffs assert Mr. McAuliffe was associated. Pls.' Opp. 32-33.

make specific allegations against Mr. McAuliffe, neither he nor this Court should be expected to guess at the factual basis for Plaintiffs' claims. Further, given that the "specific" allegations referenced by Plaintiffs do not include reference to Mr. McAuliffe, they certainly do not provide this Court with any grounds to find that the more generalized allegations in the Complaint, read as a whole, implicate him. Consequently, Plaintiffs' arguments on this point fail, and this Court should find that Plaintiffs have failed to meet Rule 9(b) and the PSLRA's requirements.[3]

Next, cognizant of the fact that, as Mr. McAuliffe argued in his motion to dismiss, the bulk of the allegations in the Complaint are not alleged against a specific actor but, rather, are alleged against defendants as a group, Plaintiffs attempt to argue that such pleading is permissible under Rule 9(b) and the PSLRA. This argument is misplaced. As the Fourth Circuit has explained, group pleading "is insufficient either to provide a defendant with fair notice of the claim against him or to protect a defendant from harm to his reputation or goodwill. . . . [t]he burden rests on plaintiffs to enable a particular defendant to determine with what it is charged." *Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228, 228 (4th Cir. 1993) (quotation marks omitted) (unpublished). Indeed, district courts in the Fourth Circuit, including courts in the Eastern District of Virginia have agreed. *See, e.g.*, *In re Cable & Wireless, PLC*, 321 F.Supp.2d 749 (E.D.Va. 2004) ("the Fourth Circuit as well as various district courts within the Fourth Circuit have held that group pleading goes against the grain of the particularity requirement of both PSLRA and Fed. R. Civ. P. 9(b)."); *David F. Apple, MD Prof'l Corp. Pension Plan v. Prudential-Bache Sec., Inc.*, 820 F. Supp. 984, 987

---

[3] Plaintiffs have argued that these specific statements, combined with "other allegations identifying misrepresentations by their source, date, and content the entirety of Plaintiffs' fraud claims," Pls.' Opp. 22, should go forward. As discussed at length in Mr. McAuliffe's motion to dismiss, *see* McAuliffe Mem. in Supp. of Mot. to Dismiss ("McAuliffe Mot."), ECF No. 19, 6-11, there are no statements in the Complaint identifying any time, place, statement, or other tortious action with respect to Mr. McAuliffe.

(W.D.N.C. 1992) ("By using common allegations to imply that each defendant is responsible for the statements and actions of the others, plaintiffs are not in compliance with Rule 9(b), which requires that a complaint set forth with particularity each defendant's culpable conduct."), *aff'd sub nom. Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228 (4th Cir. 1993). Plaintiffs have offered no reason for this Court to find otherwise.

Importantly, not only has the group pleading theory posited by Plaintiffs not been adopted by the Fourth Circuit, but it does not address the deficiencies in their Complaint. In particular, the doctrine that Plaintiffs rely on applies only to the creation of group communications or documents. That is, in some circuits, a plaintiff is allowed to presume that statements in documents generated by a company "represent the collective work of those individuals directly involved in the company's daily management." *Dunn v. Borta*, 369 F.3d 421, 434 (4th Cir. 2004) (internal quotation and citation omitted). There are no allegations in the Complaint that Mr. McAuliffe participated in any company's daily management; that he was involved in the creation of company documents or communications generally; or that he was involved in the creation of any of the documents or communications specifically described in the Complaint. Thus, on its face, even if Plaintiffs' theory were accepted by this Court, it would do nothing to advance their claims against Mr. McAuliffe.

Further, there is also nothing in the Complaint that makes it clear or even remotely plausible, that, as Plaintiffs argue "each defendant," including Mr. McAuliffe, "was involved in all of the facts as alleged." Pls. Opp. 23. Indeed, this is particularly true with respect to Mr. McAuliffe who divested from GreenTech in 2013, and, who, this Court can take judicial notice of, served as governor of Virginia, from January 2014 until January 2018. *See, e.g.*, Jim Nolan, *McAuliffe to divest from GreenTech, Franklin Pellets*, Richmond Times-Dispatch, Nov. 15, 2013,

http://www.richmond.com/news/virginia/government-politics/mcauliffe-to-divest-from-greentech-franklin-pellets/article_f3a8d08c-15fd-5368-8d8c-8dbd26e168e2.html. Given that many of the allegations in the Complaint speak directly to acts occurring after 2013, *see, e.g.*, Compl. ¶¶ 163, 166 (discussing newsletters in 2015), 164 (discussing newsletters in 2016), Plaintiffs must make specific allegations as to any misrepresentations concerning Mr. McAuliffe and cannot rely on group pleadings to advance their claims.

Finally, Plaintiffs' argument that there is no particularity requirement under the PSLRA or Rule 9(b) and that it is "sufficient that the plaintiff [] name[] the entity, though not the specific person, making the misrepresentations" is also wrong. *Id.* at 738-39; Pls.' Opp. at 27-28. *First*, to the extent that Plaintiffs have premised this argument with respect to the PSLRA on *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731 (E.D. Va. 2010), that case does not even address federal securities' claims and, as such, is wholly inapplicable in this context. *Second*, and most importantly, unlike the instant action, *Nahigian* was an action brought against two corporate defendants and involved no individual defendants. In that context, the court found that where there was an indication that an agent at one of the defendant corporations had made a representation, even where the agent was not named, the action could be attributed to the corporate defendant. *Id.* at 738-39. The court made no finding that the inference worked both ways, i.e., that the actions of a corporate defendant could be attributed to an individual when there was no specific allegation that the individual participated in those actions. Nor did it find that in an action involving individual defendants, like this one, plaintiffs are exempt from making specific allegations of wrongdoing which allege the time, place, content, and actor engaging in the tortious conduct. Indeed, in a case such as this one involving multiple defendants and alleging individual liability,

*see* Pls.' Opp. 32-33, the requirements for pleading with particularity are even more important and, indeed, are required by Rule 9(b) and the PSLRA.

> **B.**      **Plaintiffs Fail to State Claims for Fraud and Fraud in the Inducement Under Rule 12(b)(6) (Counts I & II)**

As set out in Mr. McAuliffe's motion to dismiss, Plaintiffs' fraud and fraud in the inducement claims against him fail to state a claim because there are no allegations that he misrepresented "present pre-existing facts," as required by Virginia law. *Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483, 490 (Va. 2010); *see also Boykin v. Hermitage Realty*, 360 S.E.2d 177, 178 (Va. 1987). Plaintiffs' opposition not only fails to overcome this argument, but it actually strengthens it.

As explained in his motion, the only allegation in the Complaint that could arguably be construed as a statement made by Mr. McAuliffe is the allegation that he made speeches promoting GreenTech and "how it would generate hundreds of jobs, and its ultimate success." *See* Compl. ¶ 90; McAuliffe Mot. 6-7, 11-12.  This statement is a future looking statement on its face, and is not actionable as fraud. McAuliffe Mot. 6-9. Plaintiffs' opposition does not refute Mr. McAuliffe's argument on this point. Rather, in response, Plaintiffs instead discuss paragraphs 5, 8, 92, 95, 111, 113, 159, 161, 162, 164, and 165 of the Complaint, arguing that these paragraphs are clear statements of facts sufficient to sustain their claims. Pls.' Opp. 15-18. Tellingly, all of these examples relate either to GreenTech, Gulf Coast, Charles Wang, or refer to "Defendants" as a group, and none of them single out Mr. McAuliffe or make specific allegations as to his actions. In fact, most of these paragraphs could not even pretend to allege anything with respect to Mr. McAuliffe as he was running for or serving as Governor of Virginia during the time period

referenced in the Complaint and, as such, not associated with GreenTech.[4] *See, e.g.*, Compl. ¶ 113 (discussing March 2013 newsletter for Gulf Coast); *id.* ¶ 111 (discussing December 2012 and January 2013 newsletter); *id.* ¶ 164 (discussing statements in November 2015).

Plaintiffs then assert that for any statement that is "closer to the line," it fits into an exception to the fraud doctrine pursuant to which a statement is false if "the state of the promisor's mind at the time he makes the promise is a fact so that, if he misrepresents his state of mind, he misrepresents a then existing fact." Pls.' Opp. 17 (citing *Merenstein v. St. Paul Fire & Marine Ins. Co.*, 142 F. App'x 136, 139 (4th Cir. 2005)). Notably, this is exactly what Mr. McAuliffe argued in his opening brief with respect to Plaintiffs' allegations that he made misrepresentations with respect to the award of EB-5 visas.[5] *See* McAuliffe Mot. 8-10, 12. Specifically, given that EB-5 visas can only be awarded by a third-party government agency, there is simply no way that Mr. McAuliffe could have known at the time that any alleged statements were made that Plaintiffs would not receive such visas. *Id.* In fact, as alleged, the only plausible inference the Complaint can support is that Mr. McAuliffe intended for the visas to be awarded as he, allegedly, lobbied USCIS to ensure that they would be. *Id.* This is certainly a far cry from "a promise made in absence of a

---

[4] Indeed, the discrepancies in dates here again underscore why it is necessary for Plaintiffs to adhere to the requirements of Rule 9(b) and the PSLRA in their Complaint. Given that many of the allegations they point to simply could not have pertained to Mr. McAuliffe as he was no longer with the companies in question (a point which Plaintiffs conveniently fail to allege), without more details as to the timing and specificity of alleged misrepresentations, it is simply impossible for Mr. McAuliffe to fully evaluate and defend against the Complaint.

[5] As explained in Mr. McAuliffe's motion, Plaintiffs do not make any allegations as to specific misrepresentations that Mr. McAuliffe made with respect to EB-5 visas and, as such, their allegations in the Complaint with respect to this topic are not actionable. McAuliffe Mot. 9 n.8. Nevertheless, out of an abundance of caution, Mr. McAuliffe addresses these general allegations herein, to demonstrate to the Court that even if Plaintiffs had made such allegations, they would not be actionable and must fail.

present intention of performing" it. *Merenstein*, 142 F. App'x at 139. Rather, it is a promise that the alleged promisor did, in fact, attempt to perform.

The cases cited by Plaintiffs only further underscore this point, as each case demonstrates that at the time the alleged misrepresentation was made, the person making the misrepresentation unequivocally knew that it was false. *See, e.g.*, *Cosmas v. Hassett*, 886 F.2d 8, 12 (2nd Cir. 1989) (finding that a statement made to buyers regarding a Chinese revenue source was a misrepresentation where, at the time the statement was made, the speaker knew, unequivocally, that an import restriction limiting its sales to China was in place); *Merenstein*, 142 F. App'x at 139 (finding that a statement regarding the ability to insure in the future was a misrepresentation where the speaker knew it was false at the time it was made). Nothing in the Complaint, however, plausibly alleges that Mr. McAuliffe could have known unequivocally (or even equivocally) that USCIS would not grant EB-5 visas to these Plaintiffs, nor could Plaintiffs allege as much given that the EB-5 visa applications were indeed granted and, according to the Complaint, were issued until at least 2016, well after Mr. McAuliffe divested from GreenTech.[6] *See* Compl. ¶¶ 177, 188-89. Accordingly, even by Plaintiffs' standards, the allegations made against Mr. McAuliffe cannot be actionable as fraud and must be dismissed.[7]

---

[6] It is not clear to Mr. McAuliffe what Plaintiffs intend to argue when they assert that "statements regarding legal consequences here, like immigration approval, were premised upon false statements about jobs GreenTech had created and on GreenTech's successes, making them actionable." Pls.' Opp. 17. Plaintiffs point to no specific legal authority in support of this position. Nevertheless, Plaintiffs' assertion here again underscores the necessity of pleading with particularity. Specifically, as with all companies, available information regarding GreenTech's economic viability and potential success likely was and is different for each year of its existence. Thus, to the extent that a statement alleges a misrepresentation based upon that information, knowing the specific date of such a misrepresentation is crucial to understanding the likelihood of its falsity and to preparing a defense.

[7] Plaintiffs also assert in their opposition that the argument regarding reasonable reliance made by Mr. McAuliffe or the other Defendants with respect to explicit disclaimers and memoranda

Finally, Plaintiffs also attempt to revive their fraud claims by asserting that Mr. McAuliffe's failure to provide information to Plaintiffs regarding the EB-5 visa program and GreenTech's financial state (i.e., "concealing representations") are actionable as fraud, but these arguments also fail. Pls.' Opp. 19-20. *First*, as with the bulk of Plaintiffs' opposition, almost none of the paragraphs that Plaintiffs cite to in the Complaint in reference to the "concealing representations" discuss Mr. McAuliffe. Rather, they again refer to all defendants as a group (Compl. ¶¶ 4-5, 8-9, 91), Gulf Coast (*Id.* ¶¶ 105-106, 113, 165), or GreenTech and Wang (*Id.* ¶ 161). *Second*, to the extent that Plaintiffs do reference Mr. McAuliffe, asserting that he should have informed Plaintiffs of pushback received from USCIS with respect to the EB-5 visas, there is no indication in the Complaint that Mr. McAuliffe actually had any information indicating that USCIS would not issue the visas and, indeed, the only allegation in the complaint is that at least until 2016 investors did have temporary EB-5 visas, which directly contradicts Plaintiffs' assertion. *See* Compl. ¶¶ 177, 188-89. Thus, there is nothing on the face of the Complaint supporting a fraud action against Mr. McAuliffe.

### C. Plaintiffs Fail to State Federal Securities Fraud and Mississippi Securities Fraud Claims[8] (Counts III & IV)

Plaintiffs fail to state federal and Mississippi securities fraud claims against Mr. McAuliffe because the only statements attributed to him in the Complaint—that GreenTech would "generate hundreds of jobs," and that he vouched for its "ultimate success," Compl. ¶ 90—are plainly general

---

informing them of the relevant risks fails. Pls. Opp. 11 – 15. Mr. McAuliffe relied on this argument in his motion only by way of incorporation, *see* McAuliffe Mot. 9-10, accordingly, here, he incorporates the argument set out by Mr. Rodham in his reply in response to the arguments made on this point in Plaintiffs' opposition.

[8] As explained in Mr. McAuliffe's motion and agreed to by Plaintiffs in their opposition, the Mississippi Securities' Fraud Act is interpreted consistent with the federal securities statutes. *See* McAuliffe Mot. 13; Pls.' Opp. 31 n.7. Accordingly, all arguments with respect to the federal securities statutes also apply equally to the Mississippi state law claims.

expressions of forward-looking, corporate optimism and, as such, are also the type of immaterial puffery that cannot sustain a Rule 10b-5 claim. McAuliffe Mot. 11; *see In re Harman Intern. Indus., Inc. Sec. Litig.*, 791 F.3d 90, 109-110 (D.C. Cir. 2015); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121 (10th Cir. 1997) (finding that statement that company had achieved "substantial success" constituted puffery); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 811 (2d Cir. 1996)) (company was "optimistic" and "should deliver income growth consistent with its historically superior performance" was puffery) (internal quotation and citation omitted). As with Plaintiffs' fraud arguments, discussed *supra*, Plaintiffs' opposition does not refute this argument. Accordingly, the Court should grant Mr. McAuliffe's request for dismissal on these grounds.

Furthermore, the arguments that Plaintiffs do set forth in their opposition with respect to their pleading of scienter and loss causation also fail to save their Complaint. Specifically, Plaintiffs argue that with respect to scienter, the Court should look to the Complaint as a whole and find that there is a "strong inference of scienter," noting that for corporate scienter, pleading facts against one authorized agent is sufficient. Pls.' Opp. 29. Nevertheless, with respect to individual defendants like Mr. McAuliffe, the case law makes it clear that "the plaintiff must allege facts supporting a strong inference of scienter as to each defendant." *Teachers' Retirement Sys. of La. v. Hunter*, 477 F.3d 162, 184 (4th Cir. 2007). As explained in Mr. McAuliffe's motion and discussed *supra* at 8-9, no "strong inference" of scienter can be made with respect to Mr. McAuliffe, as the face of the Complaint plainly indicates that he did not intend to deceive Plaintiffs

with respect to the award of EB-5 visas and, indeed, allegedly attempted to ensure that they would be awarded.[9]

Similarly, Plaintiffs' argument that they have properly pleaded loss causation because they allege that they lost their investments also fails. As explained in Mr. McAuliffe's motion, to satisfy the causation requirement for a Rule 10b-5 claim, a plaintiff must prove both that the alleged misrepresentation caused him to enter into the transaction (i.e. transaction causation) and that the same misrepresentation caused the actual loss suffered (loss causation). *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005). While transaction causation is essentially a "but for" test as to whether the plaintiff would have entered into the transaction, loss causation requires proof that the misstatement caused the damage to occur. *See Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001). Given that Plaintiffs have failed to sufficiently allege that Mr. McAuliffe made any specific false statements, they simply cannot show that any statement by him caused their loss. McAuliffe Mot. 12-13. Their opposition does nothing to refute this. As such, Plaintiffs' securities claims also fail.

### D. Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claim Fails (Count VII)

As set out in Mr. McAuliffe's motion, Plaintiffs' aiding and abetting breach of fiduciary duty claim against Mr. McAuliffe fails because: (1) it is not a recognized claim under Virginia law; and (2) even if it were, Plaintiffs have failed to plead that Mr. McAuliffe actually knew he was participating in a breach. McAuliffe Mot. 14-15. Nothing in Plaintiffs' opposition undermines this argument and, under any applicable law, Plaintiffs' claim against Mr. McAuliffe fails.

---

[9] Plaintiffs indicate in their opposition that Mr. McAuliffe made "guarantees" to investors about the award of EB-5 visas; however, the Complaint contains no such statements. Pls.' Opp. 29-30.

Plaintiffs' opposition makes two misguided arguments in support of their aiding and abetting claim. *First*, Plaintiffs assert that Delaware law rather than Virginia law applies to their aiding and abetting claim against Mr. McAuliffe because the partnership agreement governing Plaintiffs' investments has a Delaware choice of law clause. Pls.' Opp. 39-40. As explained in Mr. McAuliffe's motion, he was not a party to the partnership agreement and, as such, is not governed by its choice of law clause. McAuliffe Mot. 14-15. Under Virginia choice of law provisions, tort actions, such as aiding and abetting a breach of fiduciary duty, to the extent it is recognized in Virginia, are considered under the law of the "place of the wrong." *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) ("Under Virginia law, the rule of lex loci delicti, or the law of the place of the wrong, applies to choice-of-law decisions in tort actions."). Plaintiffs' Complaints alleges that "the causes of action alleged [therein] arose from business they transacted, in whole or in part, in Virginia." Compl. ¶ 55; McAuliffe Mot. 4 n.4. Thus, as to Mr. McAuliffe, Virginia law should apply and, given that an aiding and abetting claim is not recognized under Virginia law, the claim should be dismissed. McAuliffe Mot. 14-15.

*Second*, Plaintiffs appear to argue that simply participating in conduct that could constitute a breach is sufficient to implicate a defendant and, to that end, that knowledge that such conduct actually constitutes a breach is not required. *See* Pls.' Opp. 40 (stating that "knowing" modified "participation" and not "breach). This interpretation is contrary to the law in both Virginia and Delaware, and it wholly misinterprets the case that Plaintiffs cite for this proposition, *In re Rural Metro Corp.*, 88 A.3d 54, 97 (Del. Ch. 2014). In particular, *In re Rural Metro Corp.* specifically states that "[i]t is not the fiduciary that must act with *scienter,* but rather the aider and abettor. If the third party knows that the board is breaching its duty of care and participates in the breach by misleading the board or creating the informational vacuum, then the third party can be liable for

aiding and abetting." *Id.* Thus, it is evident that Plaintiffs' opposition misinterprets the governing law, and even the case that they rely on supports Mr. McAuliffe's argument that Plaintiffs' Complaint fails because it does not allege facts indicating that he knew of any breach. McAuliffe Mot. 14-15. Accordingly, Plaintiffs' aiding and abetting claim against him must also be dismissed.

### E. Plaintiffs Fail to State Claims for Conspiracy (Count VIII)

Plaintiffs have failed to state claims for conspiracy to commit fraud and conspiracy to aid and abet a breach of fiduciary duty for two reasons. *First*, their conspiracy claims fail because the underlying substantive claims have not been effectively pleaded. *See* McAuliffe Mot. 15-16. *Second*, Plaintiffs have also failed to allege that any "agreement" to commit the underlying torts took place, a requisite element for any conspiracy claim. *See id.* As demonstrated above, nothing in Plaintiffs' opposition calls either of these reasons into questions. In particular, with respect to the underlying substantive fraud and aiding and abetting claims, Plaintiffs' opposition actually strengthens Mr. McAuliffe's assertions that neither claim can be effectively pleaded against him. Moreover, Plaintiffs' opposition does not refute Mr. McAuliffe's argument that they have failed to assert that any agreement took place. Accordingly, Plaintiffs' conspiracy claims should be dismissed.

### F. Plaintiffs Have Not Alleged Sufficient Facts to Pierce the Corporate Veil

Plaintiffs' opposition provides no support for piercing the corporate veil or for holding Mr. McAuliffe individually liable for any claim in their Complaint. Plaintiffs' opposition does not contest Mr. McAuliffe's argument that Plaintiffs have failed to plead sufficient facts to pierce the corporate veil. Rather, it argues instead that veil piercing is not required because Mr. McAuliffe can be held individually liable for GreenTech and/or WM Industries Corp.'s actions. Pls.' Opp. 32-33. In the context of this action, Plaintiffs' argument is untenable.

Specifically, Plaintiffs argue that merely because they have pleaded that Mr. McAuliffe had a financial interest in GreenTech and WM Industries Corp., they have sufficiently pleaded that he should be held individually liable for these companies' acts—despite failing to allege any actual tortious conduct on Mr. McAuliffe's part in the Complaint. *See* discussion *supra.* Taken to its logical end, Plaintiffs' argument means that any person sitting on a board of a company, serving as an officer, or as a director could be sued for the company's conduct merely because they hold that position, and regardless of any participation in tortious acts or conduct. As discussed *supra*, that is plainly not what the federal rules or substantive law provide.

Rather, to successfully plead that Mr. McAuliffe is individually liable for fraud, fraud in the inducement, violation of federal and Mississippi securities, aiding and abetting a breach of fiduciary duty, and conspiracy, Plaintiffs must plead that Mr. McAuliffe actually engaged in the tortious conduct for which they seek to hold him liable. *See Tsimpedes v. Martin*, No. 1:06cv47(JCC), 2006 WL 2222393, at *2 (E.D. Va. Aug. 2, 2006) (finding that an officer can be held individually liable when he personally conducted a company's affairs in a tortious manner); *Crall v. Commonwealth*, 49 S.E. 638, 640 (Va. 1905) (indicating that you must show that the acts of the officers and directors were directly involved in tortious conduct and led the corporation to violate the law); *see also Griffin v. Heinitsh*, 309 F. Supp. 1028, 1033 (4th Cir. 1970) ("And the mere fact that the defendant was an officer and substantial stockholder will not make him personally responsible for the acts of the corporation, absent some showing to justify piercing the corporate veil and showing that the corporation was the mere alter ego of the defendant.); *In re Royal Ahold NV Sec. and ERISA Litig.*, 378 F. Supp. 2d. 334, 351 (4th Cir. 2005) ("[I]n deciding the personal jurisdiction question, I will not simply examine acts taken by a corporation and

attribute them to the corporate executives, but I will consider an individual defendant's actions directed at the forum, even if those acts were done in that defendant's corporate capacity.").

Plaintiffs' Complaint does not allege that Mr. McAuliffe was directly involved in any tortious conduct of GreenTech, WM Industries Corp., or any other corporate Defendant. Nor have they attributed even one actionable misstatement or misrepresentation to him. *See* discussion *supra*; McAuliffe Mot. 6-12. Accordingly, just as Plaintiffs' attempt to pierce the corporate veil fails, so do their assertions with respect to Mr. McAuliffe's individual liability.

## G. Plaintiffs' Claims Are Time Barred

All of Plaintiffs' claims against Mr. McAuliffe are time barred, and Plaintiffs' opposition does nothing to call this into question. Specifically, as set out in Mr. McAuliffe's motion, Plaintiffs' conspiracy, aiding and abetting, common law and statutory fraud claims are all subject to two year statutes of limitations which began running either at the time that the alleged harm occurred—December 14, 2013 or earlier, or at the time that the alleged harm was discovered or should have reasonably been discovered—at the latest, August 2, 2015. McAuliffe Mot. 18-22. Thus, no matter which way the Court evaluates the various statutes of limitations, Plaintiffs' claims are plainly barred.

Plaintiffs' arguments to the contrary fail for a number of reasons. As an initial matter, Plaintiffs assert that their fraud claims are not barred because they did not discover any wrongdoing until the second half of 2016 and, as such, the statute of limitations did not begin to run until then. Pls.' Opp. 45-48. Nevertheless, the facts pleaded in the Complaint—not the conclusory statements that Plaintiffs point to in their opposition—plainly contradict this assertion and demonstrate that Plaintiffs reasonably should have discovered the alleged fraud as well as the alleged breach of fiduciary duty well before then given that, as alleged, there were published public reports regarding

the conduct alleged in the Complaint and the disclosures Plaintiffs received should have alerted them that the statements they allegedly relied upon were false. McAuliffe Mot. 19-22. These facts make it clear that on the face of the Complaint Plaintiffs' claims have not tolled such that they are timely now. *See* Pls.' Opp. 46-47. And, importantly, contrary to Plaintiffs' assertions, Pls.' Opp. 45, this Court is under no obligation to infer that Plaintiffs' conclusory allegations are true, *see, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir.) ("We do not, however, apply the same presumption of truth to 'conclusory statements'"), *cert. denied sub nom. Beck v. Shulkin*, 137 S. Ct. 2307 (2017), and certainly not where they are directly contradicted by facts in the Complaint. *See, e.g.*, *Long v. Teradata Corp.,* No. 1:12CV787 JCC/TCB, 2012 WL 3947811, at *8 (E.D. Va. Sept. 10, 2012) (dismissing a claim where plaintiff pleaded facts directly contradicting conclusory statements of injury); *Mansfield v. Anesthesia Assocs., Ltd.,* No. 1:07CV941 JCC, 2008 WL 1924029, at *5 (E.D. Va. Apr. 28, 2008) (dismissing a claim where plaintiffs had "plead[ed] facts that directly contradict[ed]" allegations in the complaint). Accordingly, there is no reason for this Court to find that Plaintiffs' claims are timely.

Further, as set out in Mr. McAuliffe's motion to dismiss and herein, Plaintiffs' Complaint also plainly fails to properly allege that any fraud or concealment took place. Plaintiffs argue in their opposition that in order for the statute of limitations on any of their claims (fraud, conspiracy, aiding and abetting, etc.) to toll, Plaintiffs would need to affirmatively and effectively allege fraud and concealment. Pls.' Opp. 46-47. Given that they have failed to do so, even under Plaintiffs' own theory there are simply no allegations in the Complaint supporting the tolling of any of the

statute of limitations in question.[10] Accordingly, as explained in Mr. McAuliffe's motion, Plaintiffs' claims are all (at a minimum) two years too late and should be dismissed.[11]

## II. CONCLUSION

For the foregoing reasons, the claims asserted against Mr. McAuliffe in Plaintiffs' Complaint should be dismissed in their entirety. Plaintiffs' failures in pleading against Mr. McAuliffe are not curable by amendment and, as such, this Court should not grant them leave to do so.

Dated: February 27, 2018

Respectfully submitted,

/s/ Amanda Callais_____
Marc E. Elias (*pro hac vice*)
Bruce V. Spica (*pro hac vice*)
Amanda R. Callais (VSB No. 85891)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, DC 20005
Telephone: (202) 654-6203
Facsimile: (202) 654-9664
melias@perkinscoie.com
bspiva@perkinscoie.com
acallais@perkinscoie.com
*Counsel for Defendant Terry R. McAuliffe*

---

[10] Indeed, at least one court in this district has also explained that where "[t]here is no allegation in the complaint that any defendant affirmatively obstructed plaintiff from filing suit," plaintiffs' claims are not subject to tolling. *Jones v. Shooshan*, 855 F. Supp. 2d 594, 605 (E.D. Va. 2012). Thus, even if Plaintiffs had sufficiently pleaded fraud (which they have not), there are absolutely no allegations in the Complaint, conclusory or otherwise that any such conduct "affirmatively obstructed plaintiff[s] from filing suit." *Id.* Accordingly, Plaintiffs' arguments fail on this ground as well.

[11] In addition to their fraud claims, Plaintiffs also assert that tolling would apply to their aiding and abetting breach of fiduciary duty and related conspiracy claims. For the reasons already stated above, this argument plainly fails. In addition, as explained in Mr. McAuliffe's original motion, such claims run from the date of the alleged breach, and are not subject to a discovery rule. *See Katz v. Holland & Knight LLP*, No. 1:08CV1137, 2009 WL 367204, at *5 (E.D. Va. Feb. 12, 2009). Thus, where no tolling applies, as is the case here, these claims plainly accrued by at least December 2015 and must be dismissed. McAuliffe Mot. 20-21.

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following.

| | |
|---|---|
| Jonathan Link | Owen J. Shean |
| **GERARD FOX LAW, P.C.** | **AKERMAN LLP** |
| 3050 K Street, N.W., Suite 210 | 750 Ninth Street, NW, Suite 750 |
| Washington, DC 20007 | Washington, DC 20001 |
| Telephone: (202) 664-5585 | Telephone: (202) 393-6222 |
| Fax: (310) 441-4447 | Fax: (202) 393-5959 |
| jlink@gerardfoxlaw.com | owen.shean@akerman.com |
| *Counsel for Plaintiffs* | *Counsel for Defendants Anthony Rodham, American Immigration Center, LLC, GreenTech Automotive Capital A-3 CP, LLC, GreenTech Automotive, Inc., Gulf Coast Funds Management, LLC, and WM Industries Corp* |

I also certify that a true copy of the foregoing was served via U.S. Mail on this 27th day of February, 2018 upon:

| | |
|---|---|
| Mr. Xiaolin "Charles" Wang | Capital Wealth Holdings, Ltd. |
| 11301 Kellie Jean Court | c/o Newhaven Trustees (BVI) Limited |
| Great Falls, Virginia 22066 | Third Floor, J&C Building |
| | PO Box 933 |
| | Road Town, Tortola, British Virgin Islands |
| | VG 1110 |

/s/ Amanda Callais
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, DC 20005
Telephone: (202) 654-6203
Facsimile: (202) 654-9664
acallais@perkinscoie.com